**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN PHELPS,
　　　　　*Petitioner-Appellant,*

　　　　　v.

EDWARD ALAMEIDA,
　　　　　*Respondent-Appellee.*

No. 07-15167

D.C. No.
CV-98-02002-MMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted
January 13, 2009—San Francisco, California

Filed June 25, 2009

Before: Myron H. Bright,* Stephen Reinhardt and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Reinhardt

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Albert Joel Kutchins, Berkeley, California, for the petition-
er-appellant.

Juliet B. Haley, Deputy Attorney General, San Francisco, Cal-
ifornia, for the respondent-appellee.

## OPINION

REINHARDT, Circuit Judge:

For over eleven years, Kevin Phelps has sought to present
his petition for *habeas corpus* to a federal judge. For over
eleven years, he has been unsuccessful. Given the trend these
last decades on the part of Congress and the Supreme Court
"increasingly to bar the federal courthouse door to litigants
with substantial federal claims,"[1] *habeas* petitioners —
including petitioners who may have suffered severe depriva-
tions of their constitutional rights — now face myriad proce-
dural hurdles specifically designed to restrict their access to
the once-Great Writ. In this modern era, which prizes "effi-
ciency," "parity," and "judicial economy" often at the expense
of justice and liberty, it is not at all unusual for an individual
who fails to satisfy one of those many procedural hurdles to
toil on for years in hopeless pursuit of an opportunity to be
heard on the merits of his claim — an opportunity that he will

---

[1]*Juidice v. Vail*, 430 U.S. 327, 346 (1977) (Brennan, J., dissenting,
joined by Marshall, J.)

never receive. It is, however, very unusual for an individual who meticulously *has* overcome each of those procedural hurdles to sit in prison for more than a decade nonetheless, without ever being heard on the substance of his petition. That, however, is exactly what has happened to Kevin Phelps.

At each stage in Phelps' struggle over the past eleven years to have his federal *habeas* petition evaluated on the merits, he has put forward sound legal arguments, at times doing so *pro se*, for why his petition was timely filed. In fact, his arguments have been much more than sound — they have been *undeniably correct* under *currently* governing law. Phelps' one and only fault throughout this protracted process, if it can be described as a "fault" at all, is that his arguments have been overly prescient: On multiple occasions, the legal arguments that Phelps put forward for why his petition was properly filed were rejected by the judges before whom he appeared, only to be fully embraced within a matter of months by judges authoring a more authoritative, controlling opinion in a different case. The positions Phelps advanced were not, at the time they were made, foreclosed by then-governing precedents; to the contrary, when Phelps presented his arguments the law was simply *unsettled* with respect to the procedural hurdles standing in his way. However, the law did not remain unsettled for long: on multiple occasions, shortly after Phelps advanced the precise interpretation of the law that would soon be adopted, his position was vindicated in a case other than his own. On each occasion, the argument Phelps advanced was adopted as the governing legal rule mere months after a directly contrary, but nonprecedential, ruling was entered against him.

In short, entirely as a result of misfortune, Phelps sits today in prison without a single federal judge ever having evaluated the substance of his petition for habeas corpus, a petition that indisputably satisfies the strict procedural requirements set forth in the Anti-Terrorism and Effective Death Penalty Act. Even under the severely diminished *habeas corpus* protection

available under that Act, a properly filed *habeas* petition should not be dismissed on the basis of sheer happenstance or of random bad luck. "The writ of *habeas corpus* plays a vital role in protecting constitutional rights," AEDPA notwithstanding.[2] In enacting the *habeas* statute, many years prior to the adoption of AEDPA, "Congress sought to 'interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action.' "[3] As the Supreme Court warned, "[d]ismissal of a *first* federal *habeas* petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty."[4] That was true in 1996, when AEDPA was enacted, and it is true today. In fact, it is frequently also true with respect to the dismissal of a second or subsequent habeas petition when reaching the merits would allow the courts to remedy a serious injustice.

When a dismissal of a *habeas* petition rests upon an answer to an open legal question that is promptly rejected and then replaced in a more authoritative opinion by the very answer proposed by a diligent but unsuccessful petitioner, the petitioner is entitled to seek reconsideration of the dismissal entered against him. In weighing such a request for reconsideration, a district court must evaluate the specific circumstances of the case at hand and should be guided by a number of factors discussed later in this opinion; the court should not treat the motion for reconsideration as *per se* non-cognizable. Ultimately, in evaluating the motion, the district court's overriding concern should be "the incessant command of the court's conscience that justice be done in light of all the facts."[5] Here, because the district court incorrectly applied a *per se*

---

[2] *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

[3] *Reed v. Ross*, 468 U.S. 1, 10 (1984) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)).

[4] *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996) (emphasis added).

[5] *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007).

rule to reject Phelps' motion for reconsideration rather than evaluating the specific circumstances of Phelps' case, and because we conclude that the extraordinary circumstances of this case merit relief under Fed. R. Civ. P. 60(b)(6), we reverse the denial of Phelps' motion for reconsideration and remand for an evaluation of the merits of his *habeas* petition.

## I.

Phelps' prolonged journey through the state and federal post-conviction processes has involved numerous twists and turns. Because this case turns largely on the details of his efforts over the past decade to have the substance of his federal petition for *habeas corpus* reviewed by a federal judge, we recount in full the procedural history that has brought him, and us, to this point.

Phelps was prosecuted for the same murder three separate times in the California state courts. His first two trials resulted in hung juries. In the third trial, which concluded on November 17, 1994, Phelps was convicted. He was sentenced to a term of thirty-years to life in prison.

Following his conviction, Phelps simultaneously filed an appeal and a petition for a writ of *habeas corpus* in the California Court of Appeal.[6] The court denied his appeal on October 28, 1996 and denied his *habeas* petition on February 6,

---

[6]In California, the Court of Appeal and the Supreme Court both have original jurisdiction over *habeas* petitions. Unlike in other states, both appellate courts regularly exercise that original jurisdiction in the ordinary course of reviewing claims for post-conviction relief. The California Supreme Court also has appellate jurisdiction over habeas petitions denied by the Court of Appeal, which it exercises in much the same fashion that it exercises its original *habeas* jurisdiction. *See generally Carey v. Saffold*, 536 U.S. 214 (2002) (describing California state *habeas* system and comparing it to other states). We discuss the relationship between the California Supreme Court's original and appellate jurisdiction over *habeas* petitions in greater detail *infra* Part II.A.

1997. Phelps then petitioned the California Supreme Court for review of both denials. The Supreme Court denied the petition for review of his direct appeal on January 15, 1997, stating "Appellant's petition for review DENIED." *People v. Phelps*, No. S049538, 1997 Cal. LEXIS 63 (Cal. Jan. 15, 1997). With respect to his *habeas* petition, the court denied the petition for review on April 30, 1997, stating "Petition for review denied on the merits." *In re Phelps*, No. S059148, 1997 Cal. LEXIS 2441 (Cal. April 30, 1997).

On May 15, 1998, one year and fifteen days after the petition for review of the *habeas* petition was denied on the merits, Phelps filed a petition for a federal writ of *habeas corpus* in the Northern District of California. In that petition, he asserted that his constitutional rights were violated because exculpatory evidence discovered after his trial entitled him to a new trial and because his trial lawyer had provided ineffective assistance of counsel. The State responded by filing a motion to dismiss the petition on the ground that it was untimely under AEDPA, 28 U.S.C. § 2244(d), which imposes a one-year statute of limitations on federal *habeas* petitions. That one-year period begins to run when the petitioner completes the state appellate process, but excludes any time during which he has a pending petition for collateral review before the state courts. Because Phelps' state *habeas* petition was still pending before the California Supreme Court at the time his direct appeal became final, the AEDPA statute of limitations did not start to run until that court's review of his state *habeas* petition became final. *See* 28 U.S.C. § 2244(d)(2). The date on which that occurred was a central dispute before the district court.

As noted above, on April 30, 1997, the California Supreme Court denied review of Phelps' appeal from the Court of Appeal's denial of his state *habeas* petition. Under the California Rules of Court then in effect, "A *decision* of the Supreme Court becomes final thirty days after filing . . . . An *order* of the Supreme Court denying a petition for review of

a decision of a Court of Appeal becomes final when it is filed." Cal. R. Ct. 24(a) (repealed Jan. 1, 2002) (emphases added).[7] Thus, if the denial of Phelps' petition for review was a "decision," it did not become final until May 30, 1997, thirty days after its filing date, and his federal *habeas* petition filed on May 15, 1998 was filed with fifteen days to spare. However, if the Supreme Court's denial was an "order . . . denying a petition for review," then it became final when filed on April 30, 1997, and Phelps' federal *habeas* petition was fifteen days late.

Phelps argued to the district court that the California Supreme Court's summary denial of his petition for review was a decision because, in the Supreme Court's own words, it was a denial "on the merits." By way of contrast, he pointed to the denial of the petition for review of his direct appeal, which simply stated "DENIED." The State countered that, under California habeas law, only those dispositions issued by the California Supreme Court following an order to show cause are deemed "decisions."[8] The district court acknowledged that "the California courts have not clearly articulated the difference between a *decision* and an *order* in the context of Rule 24(a)," but it nonetheless agreed with the State that, because the Supreme Court had not issued an order to show

---

[7]In 2002, Rule 24 was amended so as to make "[t]he denial of a petition for review of a Court of Appeal decision" "final on filing," regardless of whether the denial was decided on the merits. *See* Cal. R. Ct. 29.4 (recodified at Cal. R. Ct. 8.532 in 2007). That amendment has no bearing on this appeal because the finality of the California Supreme Court's denial of Phelps' request for review is governed by the rules in effect at the time of that court's ruling.

[8]Ordinarily, if the California Supreme Court believes that a petitioner has established "a *prima facie* case for relief on *habeas corpus*, then an order to show cause" why the petition should not be granted will be issued to the State Attorney General. *In re Lawler*, 588 P.2d 1257, 1259 (Cal. 1979). However, if the Supreme Court believes the petition does not state a *prima facie* case, then it will issue a "summary denial," as it did in this case, which is a denial on the merits of the claim. *In re Clark*, 855 P.2d 729, 741 n.9 (Cal. 1993).

cause in Phelps' case, the denial of review was an order, not a decision. *Phelps v. Alameda*, No. 98-2002-MMC, slip op. at 3 (N.D. Cal. Dec. 28, 1998) (order granting motion to dismiss). Accordingly, the district court held that Phelps' federal habeas petition was barred by the statute of limitations.[9] *Id.*

Phelps appealed the district court's dismissal to this court on January 26, 1999, pressing the argument that the California Supreme Court's denial of his petition for review was a decision under the California Rules of Court and therefore did not become final until thirty days after filing. In an unpublished memorandum disposition, a panel of this court affirmed the district court, holding that the California Supreme Court's "denial was an 'order denying a petition for review' " because it had not been preceded by an order to show cause. *Phelps v. Alameda*, No. 99-15493, 2000 U.S. App. LEXIS 5954, at *2 (9th Cir. Mar. 29, 2000). After the panel filed its memorandum disposition, Phelps petitioned for rehearing and rehearing en banc and also petitioned for a writ of certiorari from the United States Supreme court, but he was unsuccessful with respect to all. *See Phelps v. Alameda*, No. 99-15493 (9th Cir. May 8, 2000) (order denying petition for rehearing and petition for rehearing en banc), *cert. denied*, 531 U.S. 1073 (2001).

At the time Phelps' appeal was before this court, the question of how to construe summary denials by the California Supreme Court for purposes of AEDPA's statute of limitations was an open one. In fact, when Phelps' appeal was under submission before the panel of this court reviewing his case, a separate panel was addressing precisely the same question in a different appeal. That panel reached the direct opposite result. In an unpublished memorandum disposition, that panel held that "[s]ummary denials are 'decisions' under California law," and therefore do not become final until thirty

---

[9]Phelps also raised an equitable tolling argument that the district court rejected in a decision that we affirmed.

days after filing. *Washington v. Lindsey*, No. 99-55149, 2000 U.S. App. LEXIS 9015, at *4 (9th Cir. May 4, 2000). Three months later, yet another panel of our court reached that same conclusion, also in an unpublished memorandum disposition. *See Morgan v. Fairman*, No. 99-55446, 2000 U.S. App. LEXIS 20997 (9th Cir. Aug. 15, 2000). Had Phelps' appeal been assigned to either of these other panels, his argument that his petition was timely filed would have prevailed and his constitutional claims would have been considered on the merits.

The contradiction between these various competing memorandum dispositions was definitively resolved fifteen months after Phelps' appeal became final. In *Bunney v. Mitchell*, 262 F.3d 973 (9th Cir. 2001) (per curiam), a panel of this circuit issued a published, and therefore controlling, opinion that resolved the dispute over whether summary denials by the California Supreme Court are decisions or orders for purposes of calculating the AEDPA statute of limitations. That panel adopted the position Phelps had advocated all along, holding that "[u]nder Rule 24 [of the California Rules of Court], a denial of a *habeas* petition . . . is not final for 30 days" after filing. *Id.* at 974. That decision and a series of Ninth Circuit cases that followed quickly in its wake, including a case decided en banc, made perfectly clear that the position Phelps advocated before the district court and before this court was legally correct. Had *Bunney* and its progeny resolved a few months earlier the unsettled legal question upon which Phelps' appeal turned, his *habeas* petition would have been remanded to the district court for a decision on the merits.

Shortly after Phelps' position was vindicated in *Bunney*, he filed a motion pursuant to Fed. R. Civ. P. 60(b) asking the district court to reconsider its dismissal of his *habeas* petition on the ground that, in light of the intervening change in the law, it would be unjust not to review the merits of his constitutional claims when he had correctly and consistently asserted the timeliness of his petition at every stage of his case. How-

ever, the district court, over Phelps' thoroughly briefed objection, denied his motion to reopen on the ground that it was a "second or successive" *habeas* petition. Under 28 U.S.C. § 2244(b)(3)(A), "[b]efore a second or successive [*habeas*] application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Because Phelps had not petitioned this court for permission to file his Rule 60(b) motion, and because the district court considered that motion to be a successive *habeas* petition, the court ruled that, "[a]t this juncture, . . . this Court lacks subject matter jurisdiction to determine whether the change in the law would entitle petitioner to relief." *Phelps v. Alameda*, No. 98-2002-MMC, slip op. at 2 (N.D. Cal. Mar. 26, 2002) (order denying motion to reinstate). Accordingly, the court denied Phelps' motion for reconsideration. With respect to the merits of the motion, the court also stated that "a change in the applicable law after a judgment has become final in all respects is not a sufficient basis for vacating the judgment." *Id.* (internal quotation marks omitted) (quoting *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989)).

Phelps asked the district court to issue a certificate of appealability allowing him to appeal the rejection of his Rule 60(b) motion, but it declined to do so. Phelps then petitioned this court for a certificate of appealability, which was granted with respect to the following question: did the district court err in construing Phelps' Rule 60(b) motion as a successive *habeas* petition*? Phelps v. Alameda*, No. 02-15821 (9th Cir. Dec. 2, 2002) (order granting certificate of appealability). The case was then assigned to a panel for consideration of that question. The panel, in a published opinion, however, dismissed the certificate of appealability as improvidently granted and thereupon dismissed the appeal. *See Phelps v. Alameda*, 366 F.3d 722 (9th Cir. 2004). In reaching its conclusion, the panel construed the district court's order denying Phelps' Rule 60(b) motion as containing two independent "alternative holdings": (1) a holding that the district court lacked

jurisdiction to consider the motion, and (2) a holding that the motion could not be granted on its merits. *Id.* at 725 & n.3. Curiously, the panel arrived at its conclusion despite unequivocal Supreme Court and Ninth Circuit precedents rejecting the doctrine of "hypothetical jurisdiction." These precedents clearly hold that a court has *no power* to render a "holding" on the merits of a question that it lacks jurisdiction to consider.[10] *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Rivera v. RRB*, 262 F.3d 1005, 1008 (9th Cir. 2001). *But cf. Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007). Notwithstanding these precedents, the panel held that the district court's denial of Phelps' motion rested on two independent grounds, one of which was lack of jurisdiction. The panel then stated that the question of jurisdiction was the subject of the certificate of appealability. It went on to hold that even if it were to rule in Phelps' favor on the certified question of jurisdiction, the uncertified "alternative holding" denying him relief on the merits would still stand. Accordingly, the panel held that it could not grant Phelps any meaningful relief however it resolved the jurisdictional question, and that he therefore lacked standing. On this assumption, the panel dismissed the appeal without ever deciding either the certified or uncertified question. It opted not to exercise its own authority to expand the certificate of appealability, a procedure that would have obviated the procedural difficulty that

---

[10]It is difficult to reconcile the panel's construction of the district court's order with the clear prohibition against hypothetical jurisdiction: "Because the [district] court concluded it did not have jurisdiction . . . , [its] reaching an alternative holding would have been an exercise of hypothetical jurisdiction in violation of *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94, (1998)." *United States v. Mitchell*, 518 F.3d 740, 744 n.6 (10th Cir. 2008). *But cf. Lesesne v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006). The appropriateness of the panel's analysis, however, is not before us on this appeal, and accordingly we do not revisit the panel's conclusions; we note the apparent tension in its logic only to further underscore the multitudinous, and at times unwarranted, procedural obstacles Phelps has faced in his eleven-year-long attempt to have his constitutional challenges evaluated on their merits.

the panel believed prevented it from resolving the question before it. Phelps petitioned for rehearing and for rehearing en banc, but both petitions were once again denied. *See Phelps v. Alameda*, No. 02-15821 (9th Cir. June 2, 2004) (order denying petitions for rehearing and rehearing en banc).

Eleven months after this second appeal became final, the United States Supreme Court held that a "Rule 60(b) motion [that] challenges only [a] District Court's previous ruling on the AEDPA statute of limitations . . . is not the equivalent of a successive *habeas* petition." *Gonzalez v. Crosby*, 545 U.S. 524, 535-36 (2005). The Court's opinion directly refuted the district court's holding in Phelps' case that it lacked jurisdiction to entertain his Rule 60(b) motion. In fact, the *Gonzalez* decision employs precisely the same language Phelps used when urging the court not to apply the successive-petition rule to his motion. In his brief to the district court, Phelps argued that only "Rule 60(b) motions raising new factual issues and new evidence and seeking to relitigate issues that had already been decided on the merits" should be barred by the successive-petition rule. This is precisely what the Supreme Court held. *See id.* at 531-34 (holding Rule 60(b) motion is not a successive *habeas* petition unless it "present[s] new claims for relief from a state court's judgment of conviction . . . . [or seeks to] present[ ] new evidence in support of a claim already litigated . . . . [or] seeks to revisit the federal court's denial *on the merits* of a claim for relief . . . ."). Thus, for the second time, Phelps had presented exactly the correct legal argument to the district court, but did so a few months too soon.

Following this second affirmation of his legal position, Phelps, now proceeding *pro se*, once again asked the district court to reconsider its original dismissal of his *habeas* petition as untimely, a dismissal that by this point was predicated on two indisputably erroneous legal rulings. The district court, however, once again refused to reconsider its dismissal. In denying this second motion for reconsideration, the court sim-

ply stated that Phelps "failed to set forth any cognizable ground to warrant reconsideration of the Court's prior order." *Phelps v. Alameda*, No. 98-2002-MMC (N.D. Cal. Dec. 11, 2006) (order denying motion for reconsideration). The court offered no further explanation of its decision.

Following this third refusal by the district court to examine the merits of his timely filed *habeas* petition, Phelps sought yet another certificate of appealability from the district court, which was once again denied. He then sought a certificate of appealability from this court, which was initially denied. Undeterred, Phelps petitioned this court for reconsideration of that denial, which we granted. We issued a certificate of appealability with respect to the following question: "whether the inconsistent application of rules governing finality of California Supreme Court *habeas* decisions deprived appellant of a fundamental right and constitutes an extraordinary circumstance warranting relief pursuant to Federal Rule of Civil Procedure 60(b)(6)."

Over eleven years after Phelps filed his petition for *habeas corpus* in the district court, we now address this most recent question.

## II.

Phelps' appeal from the denial of his Rule 60(b) motion presents three interrelated questions. First: following the original dismissal of his federal *habeas* petition as untimely, has there in fact been an intervening change in the law with respect to how summary denials of *habeas* petitions by the California Supreme Court are construed for purposes of calculating AEDPA's statute of limitations? Second: can a motion for reconsideration under Fed. R. Civ. P. 60(b)(6) ever be predicated on an intervening change in the law? Third: if such a motion can be predicated on an intervening change in the law, how should such a request for reconsideration be analyzed? We address each of these questions in turn.

### A.

As a preliminary matter, we must determine whether the law governing the timeliness of Phelps' *habeas* petition has indeed changed since the original judgment dismissing that petition became final. As indicated in the procedural history above, there is no doubt in our minds that the law has in fact changed, and that it has changed decisively in Phelps' favor. However, because the State's central argument on appeal is that Phelps' *habeas* petition remains untimely even under *currently* governing law, we will now address that contention.

As explained in detail above, Phelps initially filed his state petition for *habeas corpus* in the California Court of Appeal. Once that court denied his petition, he then sought review in the California Supreme Court via a petition for review. As we have previously explained, "there are two methods by which a petitioner may seek review by the California Supreme Court after a *habeas* petition is denied by the Court of Appeal. The preferred method is by a petition for review, but the petitioner is also free to file instead an original [*habeas*] petition in the California Supreme Court," invoking that court's original jurisdiction. *Saffold v. Newland*, 250 F.3d 1262, 1266 n.4 (9th Cir. 2000); *see supra* note 6. Phelps followed the "preferred method," and the California Supreme Court denied his petition for review on April 30, 1997. The district court construed that denial as an "order" under California Rule of Court 24(a) and therefore considered it final as of the date it was filed. As such, it considered Phelps' federal *habeas* petition, which was filed on May 15, 1998, to have been filed fifteen days past AEDPA's one-year statute of limitations.

**[1]** Fifteen months after the district court's dismissal became final, this court issued a published opinion holding that "Rule 24 of the California Rules of Court provides that . . . a denial of a *habeas* petition within the California Supreme Court's original jurisdiction *is not final for 30 days*." *Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir. 2001) (per

curiam) (emphasis added). *Bunney* was quickly reaffirmed in multiple published opinions of this court, including one issued by the en banc court that directly stated, "Under *Bunney*, which we now reaffirm[,]" "the California Supreme Court's denial of a petition for collateral relief does not become final until thirty days after the denial is issued." *Allen v. Lewis*, 295 F.3d 1046 (9th Cir. 2002) (en banc); *see also Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) (following *Bunney*); *Corjasso v. Ayers*, 278 F.3d 874, 879 (9th Cir. 2002) (same).

While these cases would seem to resolve in Phelps' favor the question of whether his federal *habeas* petition was timely filed, the Attorney General seizes on the words "original jurisdiction" in *Bunney*'s holding to argue that *Bunney* did not change the law with respect to individuals like Phelps who followed the "preferred method" and filed a petition for *review* with the California Supreme Court instead of filing an *original habeas* petition, as happened to be the case in *Bunney*. The state's argument is devoid of merit for multiple reasons.

**[2]** First, no less an authority than the United States Supreme Court has made clear that, for purposes of AEDPA's statute of limitations, there is absolutely no functional or legal difference between the two forms of petitions filed in the California Supreme Court. The Court explicitly stated that "the original [habeas] writ in California . . . is *interchangeable* with the petition for hearing."[11] *Carey v. Saffold*, 536 U.S. 214, 225 (2002) (emphasis added).

**[3]** Second, recognizing that there is no difference between the two petitions other than the word written on their cover

---

[11]As we have observed, "a 'petition for hearing' before the California Supreme Court . . . is now called a 'petition for review.' " *Roman v. Estelle*, 917 F.2d 1505, 1506 (9th Cir. 1990). "The same principle[s] hold[ ] for California's 'petition for review' as for the earlier 'petition for rehearing.' " *Id.*

pages, this court has directly applied the *Bunney* rule to petitions for review in precisely the same manner that it applies the rule to original *habeas* petitions. In *Biggs v. Duncan*, a case that also addressed AEDPA's statute of limitations, we said that "a petition for *review* [filed] with the California Supreme Court . . . became final 30 days [aft]er" its denial. 339 F.3d 1045, 1047 (9th Cir. 2003) (emphasis added); *see also Lott v. Mueller*, 304 F.3d 918, 922 (9th Cir. 2002) (same). The procedural history at issue in *Biggs* is directly analogous to the procedural history of Phelps' case. The State's argument is thus squarely foreclosed.

Finally, the third and most damning indication that the State's position is meritless is that the State explicitly argued *in this case* that there is no distinction between a petition for review and an original *habeas* petition filed with the California Supreme Court. In its initial pleadings before the district court requesting that Phelps' federal *habeas* petition be dismissed as untimely, the State wrote:

> When an inmate's petition for writ of *habeas corpus* in the [California] Court of Appeal has been denied, the inmate may either petition for review of that decision in the California Supreme Court, or file an original petition for *habeas corpus* in the California Supreme Court. *The two courses of action appear to differ in name only*.

Later, at oral argument before the district court, the State explicitly argued that there was no distinction between an original petition and a petition for review:

> A petitioner for writ of *habeas corpus* in the California Supreme Court may call his or her petition a petition for *habeas corpus*, or if a similar petition has been filed before the state Court of Appeal, it may be called a petition for review of the Court of Appeal *habeas corpus* petition. However, these *differ in*

*name only*. To our understanding and the cases and practice of the court, they differ in name only. *The rules as to finality are not any different*. . . . The California Supreme Court treats them as *identical for all purposes*.

It was not until *Bunney* made clear that the central argument advanced by the State before the district court was incorrect that the State reversed course and advanced the position it now urges on appeal. Thus, even if this position were not clearly erroneous under circuit and Supreme Court precedent, the State is not free on appeal to rely on it as it is directly contrary to the argument that the State presented to the district court. *C.f., e.g., United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir. 2009) ("[J]udicial estoppel is an equitable doctrine [that] . . . . bars inconsistent positions taken in the same litigation . . . .").

**[4]** In sum, the rule established in *Bunney*, as applied in *Lott* and *Biggs*, indisputably applies to Phelps' case. The State conceded as much before the district court, and its original position is the only position supported by the law.

## B.

As the discussion above makes clear, there can be no doubt that shortly after this court affirmed the dismissal of Phelps' *habeas* petition there was "a clear and authoritative change in the governing law." *Polites v. United States*, 364 U.S. 426, 432 (1960). Thus, had Phelps' petition been considered under the precedents as they existed shortly after his first appeal, there is no question that he would have prevailed. The question we must now consider is what significance, if any, this intervening change in the law holds for Phelps' motion for reconsideration under Fed. R. Civ. P. 60(b)(6).[12] We review

---

[12]Federal Rule of Civil Procedure 60(b) states as follows:

the district court's denial of the motion for an abuse of discretion. *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). However, the district court necessarily abused its discretion if its denial "rested upon an erroneous view of the law." *Faile v. Upjohn Co.*, 988 F.2d 985, 986-87 (9th Cir. 1993).

In denying the motion currently under review, the district court simply stated that Phelps "failed to set forth any cognizable ground to warrant reconsideration of [its] prior order" of dismissal. *Phelps*, No. 98-2002-MMC (N.D. Cal. Dec. 11, 2006) (order denying motion for reconsideration). However, when denying Phelps' original Rule 60(b) motion, the court provided a more detailed rationale, stating that "a change in the applicable law after a judgment has become final is not a sufficient basis for vacating the judgment." *Phelps*, No. 98-2002-MMC, slip op. at 2 (N.D. Cal. Mar. 26, 2002) (order denying motion to reinstate) (quoting *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989)). While that first motion was dismissed, incorrectly, for lack of jurisdiction, the district court presumably relied on the same logic in the denial order currently under review. Accordingly, we construe its denial of the second motion for reconsideration as predicated on the same rationale articulated in its denial of the first motion: specifically, that a Rule 60(b)(6) motion can *never* be granted if it is based on an intervening change in the law.

---

[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

PHELPS V. ALAMEIDA

In applying this *per se* rule to deny Phelps' motion, the district court quoted directly from this court's opinion in *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989). *Tomlin* affirmed the denial of a Rule 60(b)(6) motion because "the judgment [at issue] . . . became final *before* the laws changed." *Id.* at 211. The court further stated that the fact that Tomlin's motion was predicated on an intervening change in the law was "the rock on which [his] arguments founder[ed]." *Id.* at 211. Thus, if *Tomlin*'s *per se* approach remained good law, the district court's denial of Phelps' motion for reconsideration was compelled by precedent and cannot have been an abuse of discretion.

The *Tomlin per se* rule that Rule 60(b)(6) motions cannot be predicated on intervening changes in the law was, however, no longer good law. The Supreme Court directly refuted the *Tomlin* rule in a case bearing a striking resemblance to the case before us: *Gonzalez v. Crosby*, 545 U.S. 524 (2005).[13] In *Gonzalez*, an inmate in state prison filed a petition for federal *habeas* relief that was denied by the federal district and appellate courts as untimely under AEDPA's statute of limitations. *Id.* at 527. Seven months later, the Supreme Court issued a decision that reversed the rule relied upon by the court of appeals. Had the Supreme Court's new rule been applied in Gonzalez's case, it would have rendered his *habeas* petition timely. *Id.* In light of this change in the law, Gonzalez, like Phelps, filed a Rule 60(b)(6) motion seeking to reopen his case. *Id.* The Supreme Court's central holding in *Gonzalez*

---

[13] *Gonzalez* was not the first indication from the Supreme Court that Rule 60(b)(6) is not governed by a *per se* approach such as that set forth in *Tomlin*. *See Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Polites*, 364 U.S. at 432. Indeed, discussing precedents predating *Gonzalez*, we have previously observed that "the Supreme Court suggested" at an early point in its case law on this subject "that . . . it might be *wrong* to inflexibly withhold relief under Rule 60(b) 'when there has been a clear and authoritative change in the governing law.' " *Clifton v. Attorney Gen. of Cal.*, 997 F.2d 660, 664 n.5 (9th Cir. 1993) (emphasis added) (quoting *Polites*, 364 U.S. at 432).

was that a Rule 60(b)(6) motion is the *proper* means of bringing such a challenge and that such a motion should not be construed as a second or successive habeas petition subject to the strict restrictions of 28 U.S.C. § 2244(b)(3)(A).[14] *Id.* at 533.

**[5]** However, most relevant to the present issue before us, the Court then went on to decide the merits of Gonzalez's Rule 60(b) motion. In so doing, it did *not* hold that denial of the motion was required because it rested on a subsequent change in the law. Rather, the Court emphasized two specific factors to demonstrate that Gonzalez's case did not exhibit the "extraordinary circumstances" required to grant Rule 60(b)(6) relief. The Court specifically held that, because of these two factors, which we discuss in detail in the next section of our analysis, "[t]he change in the law" was an insufficient ground for relief under Rule 60(b)(6) "in petitioner's case." *Id.* (emphasis added).

**[6]** That the Court applied a case-by-case approach rather than a *per se* rule is made all the more clear by its favorable citation to the Eleventh Circuit's opinion in *Ritter v. Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987). Noting that "*Ritter* [was] cited favorably by the Supreme Court in *Gonzalez*," we have previously stated that *Ritter* "is instructive" for courts applying Rule 60(b)(6) to *habeas corpus*. *Harvest*, 531 F.3d at 748 n.8. In *Ritter*, the Eleventh Circuit squarely addressed the argument that "a supervening change in the law can never present a sufficient basis for Rule 60(b)(6) relief." 811 F.2d at 1401. The court, however, reached "the opposite conclusion" and held that precedents from its own and other circuits "plainly allow Rule 60(b)(6) relief where there has been a clear-cut change in the law." *Id.* (citing *Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir. 1982); *Fackelman v. Bell*, 564 F.2d 734. 736 (5th Cir. 1977)). The court made clear that "a change

---

[14]It is this holding that directly overruled the district court's initial denial of Phelps' first Rule 60(b) motion for lack of jurisdiction.

PHELPS v. ALAMEIDA

in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case." *Id.* Rather, it "conclude[d] that something more than a 'mere' change in the law is necessary." *Id.* Accordingly, it examined "several factors in th[e] case in addition to the fact of the change in the law" in reaching its conclusion "that the circumstances . . . warrant[ed] relief under Rule 60(b)."[15] *Id.*

   **[7]** The Supreme Court's favorable citation to *Ritter* as an "instance[ ]" in which "Rule 60(b) ha[d] an unquestionably valid role to play in [a] *habeas* case[ ]," when combined with the Court's own analysis of the Rule 60(b) motion at issue in *Gonzalez*, indicates that the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court. As the Sixth Circuit rightly held when applying *Gonzalez*, "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007) (internal quotation marks omitted). It is this "case-by-case inquiry," and not the *per se* rule of *Tomlin*, that should govern Rule 60(b)(6) in *Gonzalez*'s wake.

   **[8]** When a decision from the Supreme Court has "undercut the theory or reasoning underlying [a] prior circuit precedent in such a way that the cases are clearly irreconcilable, . . . . a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also id.* (noting that "lower courts [are] bound not only by the holdings of higher courts'

---

   [15]These factors, along with the *Gonzalez* factors, are discussed in more detail in the following section.

decisions but also by their 'mode of analysis'"). Because *Gonzalez* and *Tomlin* are clearly irreconcilable in their analytical approaches to Rule 60(b)(6), we hold that *Tomlin*'s *per se* approach has been overruled by intervening Supreme Court precedent. We agree that a "case by case inquiry" is required. In so holding, we harmonize our circuit's law with the law of nine of the eleven other circuits that have addressed this issue.[16] Only the Fourth and Tenth Circuits still adhere to a *per se* rule that changes in the law can never support a Rule 60(b)(6) motion. However, the relevant precedents in those circuits antedate *Gonzalez* by over a decade, and neither circuit appears to have revisited the issue since *Gonzalez* was decided.[17]

---

[16]*See GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007); *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 397 F.3d 334, 335 (5th Cir. 2005); *Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004); *Morris v. Horn*, 187 F.3d 333, 341-43 (3d Cir. 1999); *Kansas Pub. Empls. Retirement Sys. v. Reimer & Koger Assocs.*, 194 F.3d 922, 925 (8th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 628 (7th Cir. 1997); *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996); *W.L. Gore & Assoc. v. C.R. Bard, Inc., 977 F.2d 558, 562 (Fed. Cir. 1992); see also O'Callaghan v. Shirazi*, 204 Fed. App'x 35, 36 (1st Cir. 2006) (per curiam).

[17]*See Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46 (4th Cir. 1993); *Van Skiver v. United States*, 952 F.2d 1241, 1245 (10th Cir. 1991).

The Federal Circuit has also expressed explicit preference for the minority's per se rule, but did so in an opinion that, in addition to antedating *Gonzalez*, is unpublished and contradicts a published Federal Circuit precedent. *Compare Concept Design Elecs. & Mfg. v. Duplitronics, Inc.*, No. 96-1065, 1996 U.S. App. LEXIS 33145, at *11 (Fed. Cir. Dec. 19, 1996) (adopting the minority rule set forth in *Dowell* over the majority rule of *Ritter*), *with W.L. Gore & Assoc.*, 977 F.2d at 562 ("[A]n intervening change in law is a factor to be weighed, along with other aspects of the particular case, against the public and private interest in finality of judgments.").

The Court of Appeals for the District of Columbia Circuit does not appear to have squarely addressed post-*Gonzalez* whether a Rule 60(b)(6) motion predicated on an intervening change in the law can ever be granted. In a decision predating *Gonzalez*, the court appeared to endorse

**[9]** In sum, *Tomlin*'s *per se* approach to Rule 60(b) is no longer good law.[18] The district court's *per se* rejection of Phelps' motion for reconsideration, which relied directly and exclusively on *Tomlin*, therefore "rested upon an erroneous view of the law." *Faile*, 988 F.2d at 986-87. Accordingly, "the district court abused its discretion." *Id.*

## C.

Having concluded that the district court's rationale for rejecting Phelps' motion for reconsideration was erroneous, we now address the final issue presented by this appeal: What analysis should courts employ when evaluating the merits of a motion for reconsideration such as the one presented in this case? Ordinarily, this analysis will be conducted by district courts in the course of reviewing Rule 60(b)(6) motions in the first instance. However, as the Supreme Court held in *Gonzalez*, 545 U.S. at 536-38, appellate courts may, in their discretion, decide the merits of a Rule 60(b) motion in the first

---

the *per se* approach. *See Delta Foods Ltd. v. Republic of Ghana*, 265 F.3d 1068, 1071 (D.C. Cir. 2001) (quoting *Polites*, 364 U.S. at 431). *Contra Polites*, 364 U.S. at 433. Following *Gonzalez*, it suggested in passing and in *dicta* "that 'extraordinary circumstances' are not present when . . . there has been an intervening change in case law." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). However, because that opinion cites *Agostini* and *Gonzalez* as examples of the asserted proposition, *see id.*, it seems unlikely that the court intended to endorse a *per se* rule, given *Gonzalez*'s clear use of a case-by-case approach.

[18]In a brief footnote in a case that post-dated *Gonzalez*, we affirmed the denial of a Rule 60(b) motion on the ground that it relied on a change in decisional law, citing *Tomlin*. *See Delay v. Gordon*, 475 F.3d 1039, 1046 n.13 (9th Cir. 2007) (citing *Tomlin*, 865 F.2d at 210). Because the footnote did not cite or even mention *Gonzalez*, we cannot assume that we intended to come to any conclusion as to the effect of *Gonzalez* on *Tomlin*. Now, having considered *Gonzalez*'s effect, we conclude, as explained above, that it overrules *Tomlin*, at least with respect to the latter's *per se* rule. *Cf. Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1121 (9th Cir. 2003).

instance on appeal. *But cf. id.* at 540 (Stevens, J., dissenting). Here, because all of the facts relevant to our analysis are fully set forth in the record, and because this appeal presents unusual circumstances — specifically, that Phelps has already suffered extremely prolonged delay in the consideration of his federal *habeas* petition and the district court has already had three opportunities to rule on Phelps' motion for reconsideration — we exercise that discretion and decide the merits of Phelps' Rule 60(b)(6) motion on this appeal.

**[10]** As stated above, courts applying Rule 60(b)(6) to petitions for *habeas corpus* have considered a number of factors in deciding whether a prior judgment should be set aside or altered. Most notably, the Supreme Court in *Gonzalez* and the Eleventh Circuit in *Ritter*, laid out specific factors that should guide courts in the exercise of their Rule 60(b)(6) discretion. In discussing these factors, we do not suggest that they impose a rigid or exhaustive checklist: "Rule 60(b)(6) is a grand reservoir of equitable power," *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992) (internal footnote and quotation marks omitted), and it affords courts the discretion and power "to vacate judgments whenever such action is appropriate to accomplish justice." *Gonzalez*, 545 U.S. at 542 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). However, we have "cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in [the] timeliness and finality" of judgments. *Flores v. Arizona*, 516 F.3d 1140, 1163 (9th Cir. 2008). Given these important and potentially countervailing considerations, the exercise of a court's ample equitable power under Rule 60(b)(6) to reconsider its judgment "requires a showing of 'extraordinary circumstances.' " *Gonzalez*, 545 U.S. at 536. The factors we discuss below are designed to guide courts in determining whether such extraordinary circumstances have been demonstrated by an individual seeking relief under the rule.[19]

---

[19]The factors we describe are particularly useful in applying Rule 60(b)(6) to rejected petitions for *habeas corpus*. We note, however, that

**[11]** Our analysis must begin with the Supreme Court's decision in *Gonzalez*, a case that is both strikingly similar and dissimilar to the case before us. As described above, the posture of *Gonzalez* is almost identical to the posture of this case: a federal *habeas* petition was dismissed as untimely under AEDPA in a decision that was soon overruled in a more authoritative opinion; the petitioner then sought reconsideration of that dismissal by filing a motion for reconsideration under Rule 60(b)(6). In evaluating the merits of that motion, which it ultimately denied, the Supreme Court emphasized two specific factors that we must consider in this case as well. First, the Court emphasized that, in Gonzalez's case, "[t]he District Court's [initial] interpretation was by all appearances *correct* under the Eleventh Circuit's then-*prevailing* interpretation of [AEDPA's statute of limitations]." *Gonzalez*, 545 U.S. at 536 (emphases added). In other words, the intervening change in the law in *Gonzalez* overruled an otherwise settled legal precedent. Second, the Court stressed that "[t]he change in the law [was] all the less extraordinary in [Gonzalez's] case, because of his lack of diligence in pursuing review of the statute-of-limitations issue." *Id.* at 537. The Court noted that Gonzalez "neither raised that issue in his application for a COA, nor filed a petition for rehearing of the Eleventh Circuit's denial of a COA, nor sought certioari review." *Id.*

**[12]** Given the strong similarity between the posture of this case and *Gonzalez*, we must give significant consideration to the two *Gonzalez* factors in evaluating Phelps' motion. However, the strong *dissimilarity* between Phelps and Gonzalez with respect to those two factors means that the factors necessarily cut in Phelps' favor. Specifically, unlike in *Gonzalez*, the change in the law worked in this case by *Bunney v. Mitch-*

---

Rule 60(b) applies broadly to all federal civil actions; while some of the factors we emphasize here may be useful in contexts other than the one before us, we express no opinion on their applicability *vel non* beyond the scope of *habeas corpus*.

*ell* did not upset or overturn a settled legal principle. To the contrary, at the same time that Phelps' original appeal was pending before a panel of this court, the exact same issue was pending before two other Ninth Circuit panels considering other appeals. As described earlier, those panels reached diametrically opposite outcomes from that reached by the panel reviewing Phelps' case. Moreover, none of these dispositions was published and as such they were nonprecedential. *See Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000) ("[A]n unpublished memorandum disposition . . . is not binding precedent."). Accordingly, none of these dispositions was capable of establishing, to use the Supreme Court's words, a "prevailing interpretation of 28 U.S.C. § 2244(d)(2)" as it relates to summary denials from the California Supreme Court. *Gonzalez*, 545 U.S. at 536. Furthermore, even if memorandum dispositions were capable of demonstrating the "then-prevailing" law for purposes of this inquiry, *cf. Prison Legal News v. Lehman*, 397 F.3d 692, 701-02 (9th Cir. 2005), the discord exemplified by the contradictory memorandum dispositions here demonstrates that the law in our circuit was decidedly *un*settled at the time Phelps' *habeas* petition was before the district court. The law regarding the core disputed issue in Phelps' case did not become settled until fifteen months after his appeal became final, at which point it was clear from *Bunney* that the "prevailing interpretation of 28 U.S.C. § 2244(d)(2)" was the interpretation he had pressed all along. Accordingly, whereas the first *Gonzalez* factor cut against granting Rule 60(b)(6) relief in that case, it necessarily cuts in favor of granting such relief here.

Similarly, the sharp divergence between Phelps and Gonzalez with respect to the second *Gonzalez* factor — the petitioner's exercise of diligence in pursuing the statute-of-limitations issue — demonstrates that this factor also cuts strongly in Phelps' favor. Whereas Gonzalez "neither raised that issue in his application for a COA, nor filed a petition for rehearing of the Eleventh Circuit's denial of a COA, nor sought certiorari review of that denial," *Gonzalez*, 545 U.S. at 537, Phelps

has demonstrated more diligence than we could ever reason-
ably demand from a *habeas* petitioner. When Phelps' *habeas*
petition was first dismissed as untimely, he sought and
received a certificate of appealability and pressed on appeal
the very argument later embraced by *Bunney*. When the dis-
missal of his *habeas* petition was affirmed, he filed a petition
for rehearing and a petition for rehearing en banc. The latter
was rejected despite the clear incongruity between almost
simultaneously issued memorandum dispositions.[20] Following
the rejection of his petitions for rehearing, Phelps filed a peti-
tion for certiorari. After that was denied, he filed his first Rule
60(b)(6) motion for reconsideration a mere four months after
*Bunney* became final and vindicated his original position.
When the district court denied him a certificate of appeala-
bility from the denial of that motion he dutifully sought and
obtained a certificate from this court. When his second appeal
was dismissed, Phelps again petitioned this court for rehear-
ing and rehearing en banc. Once Phelps was vindicated by the
Supreme Court's decision in Gonzalez, he filed another
motion for reconsideration. Despite the fact that he had to pre-
pare this second motion *pro se* from his prison cell, he filed
it ten months after *Gonzalez* was issued. The *pro se* motion
and its supporting legal memorandum set forth clear, well-
reasoned, and indeed *correct* legal arguments that were sup-
ported by all of the appropriate citations to case law. When
that motion was denied, Phelps again sought a certificate of
appealability from the district court. When that was denied, he
sought a certificate from this court, and when *that* was denied
he petitioned for reconsideration, which we granted, affording
him the opportunity to argue his current appeal.

---

[20]Phelps' petition for rehearing en banc was denied four days after the
panel authoring one of the contradictory memorandum dispositions issued
its holding. *Compare Phelps v. Alameda*, No. 99-15493 (9th Cir. May 8,
2000) (order denying petition for rehearing and petition for rehearing en
banc), *with Washington v. Lindsey*, No. 99-55149, 2000 U.S. App. LEXIS
9015, at *4 (9th Cir. May 4, 2000). Our en banc court endorsed the *Bun-
ney* rule shortly after *Bunney* was decided. *See Allen*, 295 F.3d 1046.

**[13]** We cannot imagine a more sterling example of diligence than Phelps has exhibited. At every stage of this case over the past decade, Phelps has pressed all possible avenues of relief, has been remarkably undeterred by the repeated and often unjustified setbacks he has suffered, and has put forward cogent, compelling, and correct legal arguments, at times doing so without the benefit of professional legal advice. No one should have to work so hard to have the merits of his constitutional claims reviewed by a federal judge. That Phelps did so weighs strongly in his favor under the second *Gonzalez* factor.

**[14]** In addition to the two factors relied upon by the Supreme Court in *Gonzalez*, which weigh heavily in *Phelps*' favor, we believe that the factors relied upon by the Eleventh Circuit in *Ritter v. Smith* also provide useful guidance for courts applying Rule 60(b)(6) to petitions for *habeas corpus*. As we have previously stated, *Ritter* is an "instructive" precedent "cited favorably by the Supreme Court," *Harvest*, 531 F.3d at 748 n.8, as an example of a *habeas* case in which "Rule 60(b) ha[d] an unquestionably valid role to play," *Gonzalez*, 545 U.S. at 534. Indeed, *Ritter* presents the most thorough analysis thus far of Rule 60(b)(6) as applied to *habeas* petitions. In evaluating the motion for reconsideration before it, the Eleventh Circuit concluded that four "factors in th[at] case, in addition to the fact of the change in the law, persuade[d it] that the circumstances [at issue were] sufficiently extraordinary to warrant relief." *Ritter*, 811 F.2d at 1401. We discuss each of those factors in relation to Phelps' case.

The first factor articulated in *Ritter* is whether granting the motion to reconsider would "undo the past, executed effects of the judgment," thereby disturbing the parties' reliance interest in the finality of the case. 811 F.2d at 1402. As an example of a party's reliance interest in the finality of a judgment, the court noted that when a judgment conveys land from one party to another and the prevailing party "enter[s] upon the land and install[s] pipes and appurtenances," the

judgment should not be overturned even if it is predicated on a later-overruled legal precedent because the prevailing party has relied on his legal right to the land. *Id.* at 1401 (citing *Collins v. City of Wichita*, 254 F.2d 837 (10th Cir. 1958)). Similarly, the court noted that when a judgment affords a federal *habeas* petitioner a new trial that results in the eventual dismissal of the charges and his release from custody, the judgment should not be disturbed and the petitioner's freedom revoked years later due to intervening precedents because doing so would significantly alter his legal status as a free man. *See id.* at 1402 (citing *Hall v. Warden*, 364 F.2d 495 (4th Cir. 1966)). The underlying principle embodied by these examples is that Rule 60(b)(6) relief is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment.

In Phelps' case, however, neither party has relied in such a fashion on the finality of the district court's dismissal. Neither the State nor Phelps have undergone any change in legal position over the past eleven years due to the district court's judgment. To the contrary, when Phelps' petition was dismissed, his federal case simply ended: Phelps remained in prison, and the State stopped defending his imprisonment. There are no "past effects" of the judgment that would be disturbed if the case were reopened for consideration of the merits of Phelps' *habeas* petition. Instead, the parties would simply pick up where they left off. Accordingly, the first *Ritter* factor weighs heavily in Phelps' favor.

The second factor relied upon by the court in *Ritter* examines the "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Id.* This factor represents the simple principle that a change in the law should not indefinitely render preexisting judgments subject to potential challenge. Rather, individuals seeking to have a new legal rule applied to their otherwise final case should petition the court for reconsideration with a degree of promptness that respects

"the strong public interest in timeliness and finality." *Flores*, 516 F.3d at 1163. In this respect, the second *Ritter* factor is similar, although not identical, to the second *Gonzalez* factor, which emphasizes the petitioner's diligence in challenging on appeal the judgment he now seeks to overturn.

In evaluating this second factor, the Eleventh Circuit described a motion for reconsideration that was filed nine months after the original judgment became final as representing "only a very brief delay." *Ritter*, 811 F.2d at 1402; *see also id.* at 1400. In Phelps' case, his original motion for reconsideration was filed only *four* months after the judgment dismissing his petition became final.[21] Thus, much like the *Gonzalez* factor emphasizing diligence, *Ritter*'s emphasis on delay weighs strongly in Phelps' favor.

The "third factor supporting a finding of extraordinary circumstances" in *Ritter* was "the close relationship between the two cases at issue" — the decision embodying the original judgment and the subsequent decision embodying the change in the law. *Id.* at 1402. Much like the first *Gonzalez* factor, which focuses on the extent to which the law was settled prior to the intervening change, this factor is designed to recognize that the law is regularly evolving. The foundation of the American judicial system that sets it apart from many regimes

---

[21]Phelps' second motion for reconsideration was of course filed almost six years after his original dismissal became final. However, this is so only because his first motion for reconsideration was *incorrectly* dismissed as a successive *habeas* petition — an error that Phelps promptly sought to correct after *Gonzalez* overruled that erroneous dismissal. Given these circumstances, we treat the two motions as inextricably intertwined, and in examining the second *Ritter* factor we consider the length of time between when the original judgment dismissing Phelps' *habeas* petition became final after appeal, *see* Fed. R. App. P. 41, and the time at which he filed his first motion for reconsideration. To do otherwise would penalize Phelps simply for not appending the word "renewed" to his second, pro se motion for reconsideration and would thereby employ the same excessive formalism that has already frustrated the pursuit of justice throughout the long decade this case has been pending.

across the world is its common law heritage, which is imma-
nent in judicial interpretations of legal texts ranging from stat-
utes to judicial opinions to the Constitution itself.[22] Given this
tradition, legal rules and principles inevitably shift and evolve
over time, but the mere fact that they do so cannot upset all
final judgments that have predated any specific change in the
law. Rather, the *nature* of that change is important. Accord-
ingly, the third *Ritter* factor directs courts to examine closely
the original and intervening decisions at issue in a particular
motion for reconsideration predicated on an intervening
change in the law: if there is "a close connection between the
two cases, the court [will be more likely to] f[i]nd the circum-
stances sufficiently extraordinary to justify disturbing the
finality of the [original] judgment." *Id.*

In both Phelps' case and in *Ritter*, *see id.*, the intervening
change in the law directly overruled the decision for which
reconsideration was sought. Furthermore, in both cases, the
intervening precedent "resolved a conflict between" compet-
ing and coequal legal authorities. *Id.* In *Ritter*, the intervening
Supreme Court precedent resolved a split between the Elev-
enth Circuit and the Alabama Supreme Court, *id.*; in Phelps'
case, the intervening precedent resolved a conflict between
multiple Ninth Circuit panels that had issued contemporane-
ous but contradictory memorandum dispositions. The Elev-
enth Circuit considered both the direct relationship between
the original and intervening decisions and the fact that the lat-
ter decision definitively resolved a preexisting conflict in the
law as weighing in favor of granting relief under Rule
60(b)(6). The same is true in Phelps' case and the third *Ritter*

---

[22]*See, e.g.*, Jane S. Schacter, *The Confounding Common Law Original-
ism in Recent Supreme Court Statutory Interpretation: Implications for the
Legislative History Debate and Beyond*, 51 STAN. L. REV. 1 (1998); David
A. Strauss, *Common Law Constitutional Interpretation*, 63 U. CHI. L. REV.
877 (1996). *But see* Antonin Scalia, *Common-Law Courts in a Civil-Law
System: The Role of United States Federal Courts in Interpreting the Con-
stitution and Laws*, *in* A MATTER OF INTERPRETATION (1998).

factor accordingly weighs in favor of granting his motion here.

Finally, the court in *Ritter* also observed that, in applying Rule 60(b)(6) to cases involving petitions for *habeas corpus*, judges must bear in mind that "[a] federal court's grant of a writ of *habeas corpus* . . . is always a serious matter implicating considerations of comity." *Id.* at 1403. To be sure, the need for comity between the independently sovereign state and federal judiciaries is an important consideration, as is the duty of federal courts to ensure that federal rights are fully protected. However, in the context of Rule 60(b)(6), we need not be concerned about upsetting the comity principle when a petitioner seeks reconsideration not of a judgment on the *merits* of his *habeas* petition, but rather of an *erroneous* judgment that prevented the court from ever *reaching* the merits of that petition. The delicate principles of comity governing the interaction between coordinate sovereign judicial systems do not require federal courts to abdicate their role as vigilant protectors of federal rights. To the contrary, as the Supreme Court has made clear, "in enacting [the *habeas* statute], Congress sought to 'interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action.' " *Reed v. Ross*, 468 U.S. 1, 10 (1984) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)). Even after the enactment of AEDPA, "[t]he writ of *habeas corpus* plays a vital role in protecting constitutional rights." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). For that reason, the Supreme Court has emphasized that "[d]ismissal of a *first* federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996) (emphasis added). Accordingly, in applying Rule 60(b) to *habeas corpus* petitions, the Fifth Circuit has persuasively held that

> [t]he "main application" of Rule 60(b) "is to those cases in which the true merits of a case might never

be considered." Thus, although we rarely reverse a district court's exercise of discretion to deny a Rule 60(b) motion, we have reversed "where denial of relief precludes examination of the full merits of the cause," explaining that in such instances "even a slight abuse may justify reversal."

*Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (quoting *Fackelman v. Bell*, 564 F.2d 734, 735 (5th Cir. 1977); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)). We too believe that a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard. In such instances, including the case presently before us, this factor will cut in favor of granting Rule 60(b)(6) relief.

**[15]** Having carefully evaluated the factors set forth in *Gonzalez* and in *Ritter* in the context of this case, we conclude that Phelps' motion for reconsideration demonstrates the extraordinary circumstances necessary to grant relief under Rule 60(b)(6). We emphasize once again that the factors we have discussed do not present an exhaustive or mechanical list of considerations. They do, however, represent well-reasoned principles that should guide courts in exercising their discretion under Rule 60(b)(6). In this case, the lack of clarity in the law at the time of the district court's original decision, the diligence Phelps has exhibited in seeking review of his original claim, the lack of reliance by either party on the finality of the original judgment, the short amount of time between the original judgment becoming final and the initial motion to reconsider, the close relationship between the underlying decision and the now controlling precedent that resolved the preexisting conflict in the law, and the fact that Phelps does not challenge a judgment on the merits of his *habeas* petition but rather a judgment that has prevented review of those merits all weigh strongly in favor of granting Rule 60(b)(6) relief. Accordingly, we reverse the denial of Phelps' motion and

grant his request for relief from the judgment dismissing his *habeas* petition as untimely. On remand, the district court shall evaluate the merits of the timely filed *habeas* petition that Phelps presented over eleven years ago.[23]

### III.

It has sometimes been said that the law is a study of "those wise restraints that make men free." Much of law consists of necessary rules that give order and structure to a free society. Some rules promote order by emphasizing the need for efficiency, including the need for efficient management of the judicial system. Other rules are employed in the service of protecting individuals' fundamental rights and are designed to ensure that such individuals receive the Due Process they are guaranteed by our Constitution. *See* U.S. Const. amends. V, XIV. Yet far too often in recent years, concern for efficiency and procedure has overshadowed concern for basic fairness, and has transformed our fidelity to "process" into an undue obsession with formalism and technicalities. In short, a concern for procedure has far too often obscured or eclipsed the equally important if not greater role to be played by our dedication to justice. It was, after all, in order "to establish justice" that our Constitution was written. *Id.* pmbl.

Phelps' case represents the epitome of our obsession with form over substance. For over eleven years, Phelps has sat in prison while he and his attorneys have struggled to have his claim that he is being imprisoned in violation of the Constitution evaluated on its merits. Phelps has traveled up and down the federal judiciary's apparatus three separate times. In so

---

[23]The law of the case establishes that "Phelps . . . has exhausted all relevant state remedies." *Phelps*, 366 F.2d at 724. Thus, our holding that, according to the rule set forth in *Bunney* and its progeny, the petition is to be treated as timely filed removes the final procedural hurdle that remains between Phelps and a substantive review of his constitutional claims.

doing, he has produced nearly four hundred pages of legal briefs, motions, and petitions. His arguments have been evaluated by no less than twelve federal judges and nine Supreme Court Justices — not including his petitions for rehearing en banc which were reviewed by every judge of this court.

Yet, in all this time, not a single federal judge has once examined the substance of Phelps' claims. All of this energy — and, more important to Phelps, all of this *time* — has been spent evaluating one procedural question after another: Was the initial petition filed fifteen days early or fifteen days late? The answer, we learned, was early. Should the request for reconsideration have been called a "motion" or a "petition"? As it turns out, it does not matter. Did the order dismissing that motion contain a holding mixed with *dicta* or two alternative holdings? A fruitless diversion. Should the most recent motion have been rejected *per se* or reviewed under a case-by-case approach? It should have been reviewed in the context of the case at hand. To be sure, each of these questions raises legitimate legal issues. However, in wading through this endless morass of procedural questions, and frequently answering them incorrectly, a crucially important point has been repeatedly overlooked: Over eleven years ago, a man came to federal court and told a federal judge that he was being unlawfully imprisoned in violation of the rights guaranteed to him by the Constitution of the United States. More than eleven years later, not a single federal judge has ever once been allowed to seek to discover whether that claim is true.

The United States Supreme Court has made clear that the equitable power embodied in Rule 60(b) is the power "to vacate judgments whenever such action is appropriate to accomplish *justice*."[24] Given that directive, we agree that "the decision to grant Rule 60(b)(6) relief" must be measured by

---

[24]*Gonzalez*, 545 U.S. at 542 (emphasis added) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

"the incessant command of the court's conscience that justice
be done in light of all the facts."[25] With that guiding principle
in mind, we **REVERSE** the denial of Phelps' motion for
reconsideration and **REMAND** to the district court for further
proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[25]*Stokes*, 475 F.3d at 736 (6th Cir. 2007) (internal quotation marks omitted).