EDMUND G. BROWN JR.
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JULIET B. HALEY
Deputy Attorney General
State Bar No. 162823
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5960
 Fax:  (415) 703-1234
 E-mail:  Juliet.Haley@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **KEVIN PHELPS,**<br><br>                                   Petitioner,<br><br>     v.<br><br>**EDWARD ALAMEIDA, Warden,**<br><br>                                   Respondent. | C 98-02002 MMC<br><br>**MOTION TO STAY PROCEEDINGS PENDING CERTIORARI REVIEW**<br><br>Judge         The Honorable Maxine M. Chesney |

Respondent respectfully moves the Court for a stay of this Court's proceedings pending final disposition of the Supreme Court's review of Respondent's certiorari petition to be filed in the Supreme Court on or before October 28, 2009.

We have not noticed a hearing date because petitioner is an incarcerated state prisoner who is representing himself in this action.[1]

---

[1] We note that counsel was appointed for purpose of the appeal but the docket does not indicate that any appointment has been made for purposes of these proceedings.  In an abundance of caution we have served petitioner as well as petitioner's counsel on appeal.

1

**INTRODUCTION**

On July 31, 2009, the Ninth Circuit denied respondent's petition for en banc review of the court of appeals' opinion reversing this Court's denial of Phelp's Rule 60(b)(6) motion, granting Phelp's requested relief from the judgment dismssing his habeas petition as untimely and remanding the case to this Court to evaluate the merits of Phelp's petition.

In reversing this Court, the Ninth Circuit held that *Gonzalez v. Crosby,* 545 U.S. 524, 535 (2005), was irreconcilable with long standing circuit precedent that a subsequent change in decision law would not support a Rule 60(b)(6) motion. It therefore overruled circuit precedent and concluded that this Court abused its discretion in having followed circuit precedent. Additionally, the Ninth Circuit denied Respondent's motion to recall the mandate pending his intention to file a petition for writ of certiorari with the United States Supreme Court for review of the Ninth Circuit's decision.

Accordingly, Respondent seeks an order from this Court staying further proceedings pending the outcome of his certiorari petition, and, in the event the Supreme Court grants his petition, staying proceedings until final resolution of the matter by that Court.

**A.     Respondent's petition for certiorari will present a substantial question worthy of review by the Supreme Court.**

Good cause for the stay exists because Respondent's petition to the Supreme Court will present a substantial question worthy of that Court's review. As this Court's opinion correctly recognized, it was the law of the Ninth Circuit, and is the law of every other Circuit, that an intervening change in decisional law alone does not constitute extraordinary circumstances warranting relief from final judgment under Rule 60(b)(6). *See Biggins v. Hazen Paper Co,.* 111 F.3d 205, 212 (1st Cir. 1997); *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272-73 (2d Cir. 1994); *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982) (per curiam); *Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *Hess v. Cockell,* 281 F.3d 212, 216 (5th Cir. 2002); *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 159-60 (5th Cir. 1990); *Stokes v. Williams,* 475 F.3d 732, 735 (6th Cir. 2007); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 131 F.3d 625, 628-30 (7th Cir. 1997); *Carter v. Romines*, 593 F.2d 823, 824

(8th Cir. 1979); *Omar-Muhammad v. Williams,* 484 F.3d 1262, 1264 (10th Cir. 2007); *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987).

The Ninth Circuit's conclusion that *Gonzalez v. Crosby,* 545 U.S. 524 (2005) now permits equitable relief based on a change in decisional law alone creates a conflict with other circuits regarding the availability of Rule 60(b)6) relief. This opinion also conflicts with how other circuits have interpreted *Gonzalez.*

In *Gonzalez*, the Supreme Court found that it was "hardly extraordinary" within the meaning of Rule 60(b)(6) that it had subsequently changed an underlying procedural rule which, had it been the rule at the time of the earlier dismissal, would have prevented the dismissal. *Id.* at 536-537. Several circuits have cited *Gonzalez* in connection with Rule 60(b)(6) motions. Apart from this Ninth Circuit decision, none have viewed *Gonzalez* as changing the rule that a change in case law is not enough to warrant Rule 60(b)(6) relief. *See Omar-Muhammad v. Williams*, 484 F.3d 1262, 1264 (10th Cir. 2007) [*Gonzalez* "held that an appellate court opinion liberalizing the calculation of a limitations period but decided after the final dismissal of a habeas petition as untimely does not constitute 'extraordinary circumstances' sufficient to 'provide grounds for reconsideration' under Rule 60(b)(6)"]; *Kramer v. Gates,* 481 F.3d 788, 792 (D.C. Cir. 2007)[citing *Gonzalez* for the proposition that "[t]he Supreme Court has held that 'extraordinary circumstances' are not present . . . when there has been an intervening change in case law"]; *Outler v. United States*, 485 F.3d 1273, 1281 (11th Cir. 2007)["We believe that *Gonzalez* provides substantial support for our decision in this case that the change of law worked by *Castro* does not constitute extraordinary circumstances"]. Even the Sixth Circuit, which has held that change in the law is *usually* not sufficient to warrant relief, has not found that *Gonzalez* supports its case-by-case approach, and did not find a change in decisional law warranted relief in the case in which it considered it. *Stokes v. Williams*, 475 F.3d at 736.

The Ninth Circuit's opinion has given a unique and clearly erroneous interpretation to *Gonzalez*, concluding that it permits Rule 60(b)(6) relief solely based on an intervening change in case law and compels the Sixth Circuit's case-by-case approach. The opinion grounds its conclusion on the following sentence from *Gonzalez*: "The change in the law [on which the

3

1 petitioner relied] is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue." 545 U.S. at 537. Focusing entirely upon this sentence, the panel concludes that *Gonzalez* "did *not* hold that denial of the motion was required because it rested on a subsequent change in the law. Rather . . . [t]he Court specifically held that . . . '[t]he change in the law' was an insufficient ground for relief under Rule 60(b)(6) '*in petitioner's case.*'" *Phelps v. Alameida*, 569 F.3d 1120, 1132-1133 (9th Cir. 2009); italics added in *Phelps*]. According to the panel, this necessarily implies that in a different case a change in case law may be sufficient to warrant relief. Thus, concluded the panel, the rule that a Rule 60(b)(6) motion cannot be predicated solely on an intervening change in the law is "no longer good law." *Phelps* at 1132.

As indicated, this has created confusion in the law generally as to the operation of Rule 60(b)(6) and particularly in application of that rule in habeas matters, where the procedural rules are frequently given new interpretations by the courts. It is substantially likely that the Supreme Court will grant certiorari to resolve this conflict as well as to provide certainty to the finality of habeas judgments and the underlying state court convictions.

**B. This Court has broad discretion to grant a stay of proceedings in order to promote judicial economy and efficiency.**

The United States Supreme Court has clearly established that a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706-07 (1997); *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis* at 254; *see also Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir.2005) (citing *CMAX Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962)). These interests include: 1) the possible damage which may result from the granting of a stay, 2) the hardship or inequity which a party may suffer in being required to go forward, and 3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Landis* at 254.

District courts have granted stays in situations remarkably similar to this one. In *Smithkline Beecham Corp.* v. *Apotex Corp.*, 2004 U.S. Dist. Lexis 13907, No. Civ. A. 99-CV-4304 et. al., 2004 WL 1615307 at *8 (E.D. Pa. July 16, 2004) and *Walker v. Monsanto Co. Pension Plan,* 472 F. Supp. 2d 1053, 1054 (S.D. Ill 2006), the moving parties sought a stay of district court proceedings on the basis that the Supreme Court of the United States might grant certiorari in another case that could be helpful to their own. Specifically, the district court in *Smithkline* granted a minimum six-month stay without knowing "when the Supreme Court would act on *Smithkline*'s anticipated petition for writ of certiorari [in a parallel proceeding originating in another federal district court]." *Smithkline*, 2004 U.S. Dist. Lexis 13907 at *33. Similarly, the applicant for the stay in *Walker v. Monsanto* was not even a party to the certiorari petition. Nonetheless, the district court granted a stay of proceedings pending the resolution of a certiorari petition filed in *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir., 2006) because Cooper involved age discrimination claims similar to those advanced by the plaintiff in *Walker*. *Walker,* 472 F. Supp. 2d at 1054. By favorable contrast to the facts in *SmithKline* and *Walker,* in the present case, the basis for the stay is Respondent's own filing of a certiorari petition in the very case in controversy.

As applied here, the district court's holdings in *Walker* and *SmithKline* represent straight-forward applications by federal district courts of the guiding principles set forth by the United States Supreme Court in *Landis* and *Clinton*. Namely, a district court acts well within its exercise of discretion in granting the stay where, as here, the request for stay is predicated on, and limited in duration to, the resolution of a petition for certiorari, and substantial judicial economies will be promoted by the stay. *Cf Clinton v. Jones*, 520 U.S. 681, 707-8 (district court had abused its discretion in that case by granting a six-year stay of a lawsuit filed in 1994 until President Clinton left office in 2000).

**C.   Granting the stay will substantially promote judicial economy and efficiency.**

In light of the potential reversal of the Ninth Circuit's decision that may result from the Respondent's petition for writ of certiorari, the circumstances of the present case fit the criteria for granting a stay of the district court proceedings.

If the Court grants Respondent's motion to stay and the Supreme Court grants the petition, the statute of limitations issue may be conclusively resolved against Petitioner. In fact, for the reasons Respondent has outlined in Section B above, the merits of his case provide a compelling basis for the Supreme Court to do just that. Thus, the potential for the Supreme Court to uphold this Court's dismissal of the case as untimely is high.

On the other hand, if this Court were to deny Respondent's motion to stay, and if the Supreme Court were then to grant our petition and reverse the Ninth Circuit's decision, any efforts by this Court and the parties in the interim in proceedings before this Court would be rendered a nullity. All of the work of this Court, and the parties in the course of the proceedings, would be made useless and of no legal effect or purpose. In other words, failure to grant the stay may result in a substantial waste of resources and effort by this Court, as well as by the parties.

In sum, because of material prospects that Petitioner's case ultimately will be dismissed on statute of limitations grounds, considerations of judicial economy and efficiency strongly weigh in favor of granting the stay.

**D.   Failure to grant the stay will cause the Respondent to expend unnecessary public resources.**

Granting the stay serves the public's interests in its own litigation economies as well as this Court's interest in judicial economy. Presently, this Court has ordered Respondent to file an Answer on the Merits of Petitioner's multi-claimed habeas petition. As this case became final in federal court almost ten years ago, responding to this petition will require an investment of resources by the state to read the record, research the legal issues presented and file a response.

If a stay is denied, the State will have to devote resources to responding to the petition while the petition for certiorari proceeds simultaneously. That dual approach does not render the

appeal moot, *see Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam), but clearly represents a waste of public resources.  If the Ninth Circuit's order is ultimately reversed, the state will be released from the burden of responding on the merits.  *See Franklin v. Duncan*, 891 F.Supp.2d 516, 520 (N.D. Cal. 1995) (finding irreparable injury to the state absent a stay because "It makes little sense for the State to be required to immediately conduct a murder trial if there is any possibility the trial could be mooted by a reversal of this Court's order on appeal."); *Johnson v. Bagley*, 2006 U.S. Dist. LEXIS 52564, *6 (S.D. Ohio 2006) ("absent a stay, the State of Ohio might be forced to expend considerable time and resources preparing for a new mitigation hearing that might not be necessary, were the Sixth Circuit to reverse this Court's decision").  While we concede that answering the petition on the merits is not as burdensome as retrying a defendant, it still wastes public resources.

**E.    Granting the stay will not irreparably harm Petitioner's interests.**

This Court must weigh the benefits of staying the proceedings against any potential adverse consequences should the stay be granted. In this case, however, such adverse consequences arising from granting the stay are minimal to non-existent, for several reasons.

First, because Respondent intends to file his petition on or before the October 29, 2009 due date, the Supreme Court's review of the petition is likely to be completed no later than November or December of this year. Thus, if this Court grants Respondent's motion to stay, but if the Supreme Court ultimately denies his petition, these proceedings would only have incurred a modest delay of a few months. Such minimal delay would not materially prejudice either party. Second, if this Court grants Respondent's stay and the Supreme Court then grants his petition for writ of certiorari, the prospects that the case will be dismissed as untimely rise substantially. If the Supreme Court grants Respondent's petition, the potential avoidance of unnecessary judicial and litigation efforts would become a likely probability, rather than a material possibility. To be sure, the stay would continue until that Court rules on the merits, but the delay in these proceedings thereafter would be more than compensated for by considerations of judicial economy.

Significantly too, petitioner is incarcerated pursuant to a valid state judgment.  Waiting a few additional months to collateral attack his conviction will not cause him a substantial injury.

1  A cursory review of his petition indicates that his claims have little chance of success on the
2  merits. A jury found that Phelps shot and killed Mark Crosby in a gang-related drive-by
3  shooting. Nine days before Crosby's murder, Crosby's brother fired shots at Phelps' residence
4  and threated to kill Phelps' cousin. Phelps was one of four persons in the drive-by car. All four
5  occupants of the car fired shots. On the same day as the shooting, an eyewitness named Robinson
6  identified Phelps as sitting in the front passenger seat and being the person who fired the assault
7  weapon. (Robinson later identified Phelps' brother as one of the other occupants of the car.
8  Three days after Crosby's murder, Phelps' brother was murdered in apparent retaliation.) High-
9  powered ammunition consistent with that which killed Crosby was found at Phelps's residence.
10 Tool markings on this ammo matched those on shell casings found at the crime scene, indicating
11 that the ammo had been chambered in the same assault rifle. In addition, a handgun found at
12 Phelps's residence was determined to have fired six shell casings found at the murder scene. The
13 eyewitness, Robinson, was an associate of Crosby and was himself a convicted felon and drug
14 dealer. He knew Phelps both from the neighborhood and because Phelps had once robbed him.
15 Hence, the evidence against Phelps is powerful. Not only was the State's case against Phelps
16 strong, Phelps' alibi defense, presented in the form of several witnesses, was rejected by the jury.
17 While Phelps did file a motion for new trial on the basis of another eyewitness named Turner who
18 claimed not to identify Phelps, Turner told police at the time of the shooting that he could not
19 identify any of the shooters. After a full and fair hearing, Turner was expressly found not to be
20 credible.
21       Phelps' claims in his federal habeas petition are based in large part on Turner. He claims he
22 was denied due process by the denial of his motion for a new trial. Such a claim, however, does
23 not even appear to be a federal question, let alone one of merit. He also raises various routine
24 claims of ineffective assistance of counsel for failure to lodge certain objections to evidence or to
25 object to certain aspects of the prosecutor's argument. Simply put, there is nothing compelling
26 about his claims and taking together the presumption of correctness that attaches to factual
27 findings as well as the strong physical and eyewitness idenfication evidence, it is unlikely that
28 Phelps will meet his burden of establishing that the state court's rejection of his claims was

objectively unreasonable.  Under these circumstances a few months delay will not cause substantial injury.  *See Franklin v. Duncan*, 891 F.Supp.2d at 521 ("There is little reason to believe that issuance of a stay of retrial will substantially injure [petitioner].  It will simply provide the State the opportunity to appeal without either side being forced to go through another trial in the meantime.").

## CONCLUSION

For these reasons, the Respondent respectfully requests that the Court issue a stay of proceedings pending the Supreme Court's ruling on the his petition for writ of certiorari and, in the event the Supreme Court grants his petition, that the stay shall continue in effect until final resolution of the subject matter jurisdiction issue by that Court.

Dated:  September 25, 2009                    Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General


/s/ Juliet B. Haley

JULIET B. HALEY
Deputy Attorney General
*Attorneys for Respondent*

SF2002FH0041
20223920.doc

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Kevin Phelps v. Edward Alameida, Warden**

No.:   **C 98-02002 MMC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On September 25, 2009, I served the attached **MOTION TO STAY PROCEEDINGS PENDING CERTIORARI REVIEW** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Kevin Phelps
CDCR #J-46249
Folsom State Prison "Old Folsom"
B1-B4-28-U
P. O. Box 950
Folsom, CA 95763**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 25, 2009, at San Francisco, California.

| J. Wong | J Wong |
|---|---|
| Declarant | Signature |

SF2002FH0041
20224026.doc