1  KEVIN PHELPS
   No. J-46249 / 5 - BA -124
2  Folsom State Prison
   PO Box 715071
3  Represa, CA   95671

4  PETITIONER *IN PROPRIA PERSONA*

5  AJ KUTCHINS
   P.O. Box 5138
6  Berkeley, California  94705
   (510) 841-5635
7  ajkutchins@earthlink.net
   State Bar # 102322
8
   Appearing Specially for Petitioner
9  KEVIN PHELPS

10

11                     UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13  KEVIN PHELPS,

14       Petitioner and Appellant,

15       vs.                              No.  CV 98-02002 MMC

16  EDWARD ALAMEIDA, WARDEN,

17       Respondent and Appellee.
                                    /
18

19      **PETITIONER'S OPPOSITION TO STATE'S MOTION FOR STAY**

20

21       At the conclusion of its recent published opinion in this case, the Ninth Circuit vividly

22  set out the most essential facts regarding its history in federal court:

23          "For over eleven years, Phelps has sat in prison while he and his

24      attorneys have struggled to have his claim that he is being imprisoned in

25      violation of the Constitution evaluated on its merits.  Phelps has traveled up and

26      down the federal judiciary's apparatus three separate times.  In so doing, he has

27      produced nearly four hundred pages of legal briefs, motions, and petitions.  His

28      arguments have been evaluated by no less than twelve federal judges and nine

OPP TO MOTION FOR STAY

Supreme Court Justices – not including his petitions for rehearing *en banc* which were reviewed by every judge of this court.[1]

"Yet, in all this time, not a single federal judge has once examined the substance of Phelps' claims. All of this energy – and, more important to Phelps, all of this *time* – has been spent evaluating one procedural question after another . . . . [I]n wading through this endless morass of procedural questions, and frequently answering them incorrectly, a crucially important point has been repeatedly overlooked: Over eleven years ago, a man came to federal court and told a federal judge that he was being unlawfully imprisoned in violation of the rights guaranteed to him by the Constitution of the United States. More than eleven years later, not a single federal judge has ever once been allowed to seek to discover whether that claim is true."

*Phelps v. Alameida*, 569 F.3d 1120, 1141 (9th Cir. 2009) [emphasis by the Court].

Now that it has finally been ordered to respond to the merits of Petitioner's federal constitutional claims, the State asks the Court to delay this much-delayed case yet again – and to delay it indefinitely. The request is almost comically inappropriate, and should be summarily denied.[2] At long last, Kevin Phelps is entitled to his day in court.

The Supreme Court has set out the standard applicable to a stay request in a federal *habeas corpus* proceeding, as follows:

"Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors

---

[1] It must be added that, since the quoted language was published, the entire Ninth Circuit had the opportunity to review yet another petition for rehearing *en banc* – this one submitted by the State – and not one judge on that Court even requested a vote regarding rehearing.

[2] As the State notes (but never quite explains) in its stay request, the Ninth Circuit summarily rebuffed the State's final effort to obtain similar relief from that court, when it "denied Respondent's motion to recall the mandate pending his intention to file a petition for writ of certiorari . . . ." (Motion to Stay at 2:10-12).

regulating the issuance of a stay are generally the same: (1) whether the stay
applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay; (3) whether
issuance of the stay will substantially injure the other parties interested in the
proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) [citations omitted]; see, *Franklin v. Duncan*, 891 F. Supp. 516, 519 (N.D. Cal. 1995).   Taking these factors, in turn, it is readily apparent that the State is not entitled to the stay it requests.

**1. The State's Chances of Obtaining the Relief It Seeks Are Remote At Best**

The principal portion of the State's motion is devoted to the assertion that its "petition for certiorari will present a substantial question worthy of review by the Supreme Court."  This in turn consists of a rehash of the arguments so soundly rejected by the Ninth Circuit.   In reiterating those arguments, the State manages to mischaracterize completely the Ninth Circuit's opinion, which most certainly did *not* hold that "an intervening change in decisional law *alone*" is sufficient to warrant relief under Fed. Rule Civ. Proc. 60(b)(6).  On the contrary, the  appellate court adopted the analysis framed by the Eleventh Circuit, which proceeds from the premise that, to justify Rule 60(b)(6) relief, "'something more than a "mere" change in the law is necessary.'"  *Phelps v. Alameida*, 569 F.3d at 1133, quoting, *Ritter v. Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987); discussed approvingly in *Gonzalez v. Crosby*, 545 U.S. 524 (2005).  As the Ninth Circuit went on to explain, what is required under *Gonzalez* is a more thoughtful analysis, tied to the facts and history of the specific case under consideration rather than the Procrustean approach on which the State vainly insists.

But it is unnecessary to belabor the merits of the Ninth Circuit's opinion – an opinion that is really more than up to the task of speaking for itself.  The even more obvious problem facing the State is the extreme unlikelihood of persuading the Supreme Court to make this case

1  one of the very tiny handful of cases in which it grants *certiorari* review in a given year.[3]  The

2  fact that not even a single Ninth Circuit judge requested a vote on rehearing the matter *en banc*

3  is a fair indication of the State's chance of obtaining Supreme Court review.  Thus even if the

4  State had an even chance of prevailing on the merits of its arguments in the Supreme Court

5  (and it does not), when one calculates in the remoteness of the possibility that the high court

6  will ever consider those merits, the State's prospects for prevailing in its proposed appellate

7  adventure are utterly remote.

8  ## 2.  The State Is Not Facing Any "Irreparable Injury" Whatever

9      The sum of the "injury" that the State will suffer, in the absence of a stay, consists of

10  this: After nearly 12 years, the State will finally be required to file a brief (*i.e.,* the "Answer")

11  in this Court, responding to the merits of Petitioner's federal constitutional claims.

12      By the time that happens, and Petitioner's traverse is filed, the Supreme Court will have

13  decided whether to grant *certiorari*, or will be much closer to having made that decision.  Even

14  if, after briefing is complete, this Court determines an evidentiary hearing is needed,

15  scheduling *that* proceeding can await the Supreme Court's *cert*. decision.[4]   But there is no

16  reason whatever why the *habeas* briefing process – which, in the experience of undersigned

17  counsel, inevitably takes many months to complete – should be delayed entirely while the

18  State saddles up Rocinante and sets out on its quest to get the Ninth Circuit reversed.[5]

19      How far the State falls short of making the necessary showing in this regard is nicely

20  illustrated by contrast with the very cases it cites.  This is *not* a situation in which the State will

21

22  [3]By coincidence, the New York Times just published the results of a study finding that the
   Supreme Court is granting *certiorari* in an ever smaller number of cases – between 70 and 80 per

23  year, or less than 1% of those in which petitions are filed.  As the article notes, the cases taken  now
   number about one-half of the 150 or so that were granted in the early 1980's.  Liptak, *The Case of*

24  *the Plummeting Supreme Court Docket*, The New York Times (Sept. 28, 2009).

25  [4]And, of course, if and when the Supreme Court does deign to take review, a motion to
   stay proceedings in this Court would be far more appropriate.

26

27  [5] Petitioner's strong opposition to the stay requested by the State does not signify that he
   would oppose a request by the State's counsel for a routine, reasonable extension of time

28  within which to file the Answer.

1   "be required to immediately conduct a murder trial" (Motion to Stay at 7:4-6, quoting,

2   *Franklin v. Duncan*, 891 F.Supp. at 520),[6] nor will the State "be forced to expend considerable

3   time and resources preparing for a new [capital] mitigation hearing . . . ." (*Id*. at 7:6-9,

4   quoting, *Johnson v. Bagley*, 2006 U.S. Dist. LEXIS 52564, *6 (S.D. Ohio 2006).

5   All the State needs to do is draft and file a brief responding to Petitioner's claims. And if those

6   claims are anywhere near as weak as the State insists they are (see, *id.* at 7-8), then that really

7   should not be very much work. It certainly does not constitute "irreparable injury."

8   ### 3.  A Stay Would Be Grossly Unfair to the Petitioner

9   Although Petitioner remains locked up in a state prison every day that this case lingers,

10  the State blithely asserts that "a few months delay will not cause [him] substantial injury."

11  Motion to Stay at 9:1-3, citing, *Franklin v. Duncan*, 891 F.Supp. at 521. Apparently the State

12  either failed to read, or failed to report, the portion of the cited *Franklin* case in which Judge

13  Legge (over the State's strenuous opposition) ordered that the petitioner be released on bail

14  while the State pursued its appellate remedies. Put simply: The reason – and the *only* reason

15  – why the stay in that case did not substantially injure Mr. Franklin was *because he was*

16  *released from custody*. For precisely the same reason, the stay sought by the State in this case

17  would indeed cause "substantial injury" to the imprisoned Kevin Phelps. The Petitioner in the

18  instant case is paying for every day of delay "in a coin that the state cannot refund." *Brown*

19  *v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003). It is appalling that the State would suggest that

20  such a cost to the Petitioner means nothing at all.

21  ### 4.  The Public Interest Does Not Reside In Further Delay

22  As discussed, the Court need not expend significant resources on this case before the

23  State's *certiorari* petition is decided, and can certainly stay proceedings in the very unlikely

24  event that *cert.* is granted. Thus the concerns about judicial economy, to which the State

25  alludes, are not substantial in fact.

26

27  ───────────────

28      [6]In a typographical error, the State (mis)cites the *Franklin* case as having been published in Fed.Supp. *2d* – in fact it appears in the first Federal Supplement series.

1    There *is* an important public interest at stake here, however – albeit one that is more

2    often honored in the breach.  It is the policy of the United States, enunciated by Congress, that

3    *habeas corpus* petitions are to be granted top priority, considered immediately, and that –

4    unless the petition is facially without merit – the Court "shall *forthwith* award the writ or issue

5    an order directing the respondent to show cause why the writ should not be granted . . . ."  28

6    U.S.C. §2243;[7] see also, Habeas Rule 4 (requiring that petitions be determined "promptly").

7    Of course, the realities of court management and the sheer volume of *habeas* submissions in

8    the federal courts have required a good deal of adjustment in that regard.  But neither the

9    statutory language nor the underlying policy concerns have ever changed.  It remains a

10   fundament of our federal legal system that, when someone in prison presents a colorable claim

11   that his or her continued confinement offends the Constitution, that claim should be considered

12   without undue delay.  The history of this case has already severely tested the flexibility of that

13   basic principle.  What the State now proposes would do it violence.

14                                              **Conclusion**

15          For the reasons set forth above, Petitioner Kevin Phelps respectfully requests that the

16   Court deny the State's "Motion to Stay Proceedings Pending Certiorari Review," without

17   prejudice to any such motion to be filed if and when such review is granted.

18

19   Dated: September 29, 2009                    Respectfully submitted,

20

21

22                                  _____/s/_____
                                    AJ KUTCHINS, Appearing Specially for
23                                  KEVIN PHELPS
                                    Petitioner *in propria persona*

24

25

26   _____

27          [7]The statute goes on to specify that the State's return to the order to show cause must be
     filed "within three days unless for good cause additional time, not exceeding twenty days,
28   is allowed."  *Ibid*.

1  KEVIN PHELPS
   No. J-46249 / 5 - BA -124
2  Folsom State Prison
   PO Box 715071
3  Represa, CA    95671

4  PETITIONER *IN PROPRIA PERSONA*

5  AJ KUTCHINS
   P.O. Box 5138
6  Berkeley, California  94705
   (510) 841-5635
7  ajkutchins@earthlink.net
   State Bar # 102322
8
   Appearing Specially for Petitioner
9  KEVIN PHELPS

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13  KEVIN PHELPS,

14       Petitioner and Appellant,

15            vs.                          No.  CV 98-02002 MMC

16  EDWARD ALAMEIDA, WARDEN,

17       Respondent and Appellee.
                                    /
18

19      **PETITIONER'S OPPOSITION TO STATE'S MOTION FOR STAY**

20

21      At the conclusion of its recent published opinion in this case, the Ninth Circuit vividly

22  set out the most essential facts regarding its history in federal court:

23          "For over eleven years, Phelps has sat in prison while he and his

24      attorneys have struggled to have his claim that he is being imprisoned in

25      violation of the Constitution evaluated on its merits.  Phelps has traveled up and

26      down the federal judiciary's apparatus three separate times.  In so doing, he has

27      produced nearly four hundred pages of legal briefs, motions, and petitions.  His

28      arguments have been evaluated by no less than twelve federal judges and nine

OPP TO MOTION FOR STAY

Supreme Court Justices – not including his petitions for rehearing *en banc* which were reviewed by every judge of this court.[1]

"Yet, in all this time, not a single federal judge has once examined the substance of Phelps' claims. All of this energy – and, more important to Phelps, all of this *time* – has been spent evaluating one procedural question after another . . . . [I]n wading through this endless morass of procedural questions, and frequently answering them incorrectly, a crucially important point has been repeatedly overlooked: Over eleven years ago, a man came to federal court and told a federal judge that he was being unlawfully imprisoned in violation of the rights guaranteed to him by the Constitution of the United States. More than eleven years later, not a single federal judge has ever once been allowed to seek to discover whether that claim is true."

*Phelps v. Alameida*, 569 F.3d 1120, 1141 (9th Cir. 2009) [emphasis by the Court].

Now that it has finally been ordered to respond to the merits of Petitioner's federal constitutional claims, the State asks the Court to delay this much-delayed case yet again – and to delay it indefinitely. The request is almost comically inappropriate, and should be summarily denied.[2] At long last, Kevin Phelps is entitled to his day in court.

The Supreme Court has set out the standard applicable to a stay request in a federal *habeas corpus* proceeding, as follows:

"Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors

---

[1]It must be added that, since the quoted language was published, the entire Ninth Circuit had the opportunity to review yet another petition for rehearing *en banc* – this one submitted by the State – and not one judge on that Court even requested a vote regarding rehearing.

[2]As the State notes (but never quite explains) in its stay request, the Ninth Circuit summarily rebuffed the State's final effort to obtain similar relief from that court, when it "denied Respondent's motion to recall the mandate pending his intention to file a petition for writ of certiorari . . . ." (Motion to Stay at 2:10-12).

regulating the issuance of a stay are generally the same: (1) whether the stay
applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay; (3) whether
issuance of the stay will substantially injure the other parties interested in the
proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) [citations omitted]; see, *Franklin v. Duncan*, 891 F. Supp. 516, 519 (N.D. Cal. 1995).   Taking these factors, in turn, it is readily apparent that the State is not entitled to the stay it requests.

**1. The State's Chances of Obtaining the Relief It Seeks Are Remote At Best**

The principal portion of the State's motion is devoted to the assertion that its "petition for certiorari will present a substantial question worthy of review by the Supreme Court."  This in turn consists of a rehash of the arguments so soundly rejected by the Ninth Circuit.  In reiterating those arguments, the State manages to mischaracterize completely the Ninth Circuit's opinion, which most certainly did *not* hold that "an intervening change in decisional law *alone*" is sufficient to warrant relief under Fed. Rule Civ. Proc. 60(b)(6).  On the contrary, the  appellate court adopted the analysis framed by the Eleventh Circuit, which proceeds from the premise that, to justify Rule 60(b)(6) relief, "'something more than a "mere" change in the law is necessary.'"  *Phelps v. Alameida*, 569 F.3d at 1133, quoting, *Ritter v. Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987); discussed approvingly in *Gonzalez v. Crosby*, 545 U.S. 524 (2005).  As the Ninth Circuit went on to explain, what is required under *Gonzalez* is a more thoughtful analysis, tied to the facts and history of the specific case under consideration rather than the Procrustean approach on which the State vainly insists.

But it is unnecessary to belabor the merits of the Ninth Circuit's opinion – an opinion that is really more than up to the task of speaking for itself.  The even more obvious problem facing the State is the extreme unlikelihood of persuading the Supreme Court to make this case

1  one of the very tiny handful of cases in which it grants *certiorari* review in a given year.[3]  The

2  fact that not even a single Ninth Circuit judge requested a vote on rehearing the matter *en banc*

3  is a fair indication of the State's chance of obtaining Supreme Court review.  Thus even if the

4  State had an even chance of prevailing on the merits of its arguments in the Supreme Court

5  (and it does not), when one calculates in the remoteness of the possibility that the high court

6  will ever consider those merits, the State's prospects for prevailing in its proposed appellate

7  adventure are utterly remote.

8  ## 2.  The State Is Not Facing Any "Irreparable Injury" Whatever

9       The sum of the "injury" that the State will suffer, in the absence of a stay, consists of

10  this: After nearly 12 years, the State will finally be required to file a brief (*i.e.,* the "Answer")

11  in this Court, responding to the merits of Petitioner's federal constitutional claims.

12       By the time that happens, and Petitioner's traverse is filed, the Supreme Court will have

13  decided whether to grant *certiorari*, or will be much closer to having made that decision.  Even

14  if, after briefing is complete, this Court determines an evidentiary hearing is needed,

15  scheduling *that* proceeding can await the Supreme Court's *cert*. decision.[4]  But there is no

16  reason whatever why the *habeas* briefing process – which, in the experience of undersigned

17  counsel, inevitably takes many months to complete – should be delayed entirely while the

18  State saddles up Rocinante and sets out on its quest to get the Ninth Circuit reversed.[5]

19       How far the State falls short of making the necessary showing in this regard is nicely

20  illustrated by contrast with the very cases it cites.  This is *not* a situation in which the State will

21

22       [3]By coincidence, the New York Times just published the results of a study finding that the

23  Supreme Court is granting *certiorari* in an ever smaller number of cases – between 70 and 80 per
     year, or less than 1% of those in which petitions are filed.  As the article notes, the cases taken  now

24  number about one-half of the 150 or so that were granted in the early 1980's.  Liptak, *The Case of
     the Plummeting Supreme Court Docket*, The New York Times (Sept. 28, 2009).

25       [4]And, of course, if and when the Supreme Court does deign to take review, a motion to

26  stay proceedings in this Court would be far more appropriate.

27       [5] Petitioner's strong opposition to the stay requested by the State does not signify that he
     would oppose a request by the State's counsel for a routine, reasonable extension of time

28  within which to file the Answer.

OPP TO MOTION FOR STAY                    4

1  "be required to immediately conduct a murder trial" (Motion to Stay at 7:4-6, quoting,

2  *Franklin v. Duncan*, 891 F.Supp. at 520),[6] nor will the State "be forced to expend considerable

3  time and resources preparing for a new [capital] mitigation hearing . . . ." (*Id.* at 7:6-9,

4  quoting, *Johnson v. Bagley*, 2006 U.S. Dist. LEXIS 52564, *6 (S.D. Ohio 2006).

5  All the State needs to do is draft and file a brief responding to Petitioner's claims.  And if those

6  claims are anywhere near as weak as the State insists they are (see, *id.* at 7-8), then that really

7  should not be very much work.  It certainly does not constitute "irreparable injury."

8  ### 3.  A Stay Would Be Grossly Unfair to the Petitioner

9    Although Petitioner remains locked up in a state prison every day that this case lingers,

10  the State blithely asserts that "a few months delay will not cause [him] substantial injury."

11  Motion to Stay at 9:1-3, citing, *Franklin v. Duncan*, 891 F.Supp. at 521.  Apparently the State

12  either failed to read, or failed to report, the portion of the cited *Franklin* case in which Judge

13  Legge (over the State's strenuous opposition) ordered that the petitioner be released on bail

14  while the State pursued its appellate remedies.  Put simply: The reason – and the *only* reason

15  – why the stay in that case did not substantially injure Mr. Franklin was *because he was*

16  *released from custody*.  For precisely the same reason, the stay sought by the State in this case

17  would indeed cause "substantial injury" to the imprisoned Kevin Phelps.  The Petitioner in the

18  instant case is paying for every day of delay "in a coin that the state cannot refund."  *Brown*

19  *v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003).  It is appalling that the State would suggest that

20  such a cost to the Petitioner means nothing at all.

21  ### 4.  The Public Interest Does Not Reside In Further Delay

22    As discussed, the Court need not expend significant resources on this case before the

23  State's *certiorari* petition is decided, and can certainly stay proceedings in the very unlikely

24  event that *cert.* is granted.  Thus the concerns about judicial economy, to which the State

25  alludes, are not substantial in fact.

26

27    [6]In a typographical error, the State (mis)cites the *Franklin* case as having been published

28  in Fed.Supp. *2d* – in fact it appears in the first Federal Supplement series.

1  There *is* an important public interest at stake here, however – albeit one that is more

2  often honored in the breach.  It is the policy of the United States, enunciated by Congress, that

3  *habeas corpus* petitions are to be granted top priority, considered immediately, and that –

4  unless the petition is facially without merit – the Court "shall *forthwith* award the writ or issue

5  an order directing the respondent to show cause why the writ should not be granted . . . ."  28

6  U.S.C. §2243;[7] see also, Habeas Rule 4 (requiring that petitions be determined "promptly").

7  Of course, the realities of court management and the sheer volume of *habeas* submissions in

8  the federal courts have required a good deal of adjustment in that regard.  But neither the

9  statutory language nor the underlying policy concerns have ever changed.  It remains a

10 fundament of our federal legal system that, when someone in prison presents a colorable claim

11 that his or her continued confinement offends the Constitution, that claim should be considered

12 without undue delay.  The history of this case has already severely tested the flexibility of that

13 basic principle.  What the State now proposes would do it violence.

14 **Conclusion**

15 For the reasons set forth above, Petitioner Kevin Phelps respectfully requests that the

16 Court deny the State's "Motion to Stay Proceedings Pending Certiorari Review," without

17 prejudice to any such motion to be filed if and when such review is granted.

19 Dated: September 29, 2009            Respectfully submitted,

22                    /s/
   AJ KUTCHINS, Appearing Specially for
23 KEVIN PHELPS
   Petitioner *in propria persona*

[7]The statute goes on to specify that the State's return to the order to show cause must be filed "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Ibid*.

1  KEVIN PHELPS
   No. J-46249 / 5 - BA -124
2  Folsom State Prison
   PO Box 715071
3  Represa, CA    95671

4  PETITIONER *IN PROPRIA PERSONA*

5  AJ KUTCHINS
   P.O. Box 5138
6  Berkeley, California  94705
   (510) 841-5635
7  ajkutchins@earthlink.net
   State Bar # 102322
8
   Appearing Specially for Petitioner
9  KEVIN PHELPS

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13  KEVIN PHELPS,

14        Petitioner and Appellant,

15        vs.                                No.  CV 98-02002 MMC

16  EDWARD ALAMEIDA, WARDEN,

17        Respondent and Appellee.
                                        /
18

19         **PETITIONER'S OPPOSITION TO STATE'S MOTION FOR STAY**

20

21        At the conclusion of its recent published opinion in this case, the Ninth Circuit vividly

22  set out the most essential facts regarding its history in federal court:

23            "For over eleven years, Phelps has sat in prison while he and his

24        attorneys have struggled to have his claim that he is being imprisoned in

25        violation of the Constitution evaluated on its merits.  Phelps has traveled up and

26        down the federal judiciary's apparatus three separate times.  In so doing, he has

27        produced nearly four hundred pages of legal briefs, motions, and petitions.  His

28        arguments have been evaluated by no less than twelve federal judges and nine

OPP TO MOTION FOR STAY

Supreme Court Justices – not including his petitions for rehearing *en banc* which were reviewed by every judge of this court.[1]

> "Yet, in all this time, not a single federal judge has once examined the substance of Phelps' claims. All of this energy – and, more important to Phelps, all of this *time* – has been spent evaluating one procedural question after another . . . . [I]n wading through this endless morass of procedural questions, and frequently answering them incorrectly, a crucially important point has been repeatedly overlooked: Over eleven years ago, a man came to federal court and told a federal judge that he was being unlawfully imprisoned in violation of the rights guaranteed to him by the Constitution of the United States. More than eleven years later, not a single federal judge has ever once been allowed to seek to discover whether that claim is true."

*Phelps v. Alameida*, 569 F.3d 1120, 1141 (9th Cir. 2009) [emphasis by the Court].

Now that it has finally been ordered to respond to the merits of Petitioner's federal constitutional claims, the State asks the Court to delay this much-delayed case yet again – and to delay it indefinitely. The request is almost comically inappropriate, and should be summarily denied.[2] At long last, Kevin Phelps is entitled to his day in court.

The Supreme Court has set out the standard applicable to a stay request in a federal *habeas corpus* proceeding, as follows:

> "Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors

---

[1]It must be added that, since the quoted language was published, the entire Ninth Circuit had the opportunity to review yet another petition for rehearing *en banc* – this one submitted by the State – and not one judge on that Court even requested a vote regarding rehearing.

[2]As the State notes (but never quite explains) in its stay request, the Ninth Circuit summarily rebuffed the State's final effort to obtain similar relief from that court, when it "denied Respondent's motion to recall the mandate pending his intention to file a petition for writ of certiorari . . . ." (Motion to Stay at 2:10-12).

1      regulating the issuance of a stay are generally the same: (1) whether the stay

2      applicant has made a strong showing that he is likely to succeed on the merits;

3      (2) whether the applicant will be irreparably injured absent a stay; (3) whether

4      issuance of the stay will substantially injure the other parties interested in the

5      proceeding; and (4) where the public interest lies.

6  *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) [citations omitted]; see, *Franklin v. Duncan*,

7  891 F. Supp. 516, 519 (N.D. Cal. 1995).   Taking these factors, in turn, it is readily apparent

8  that the State is not entitled to the stay it requests.

9      **1. The State's Chances of Obtaining the Relief It Seeks Are Remote At Best**

10      The principal portion of the State's motion is devoted to the assertion that its "petition

11  for certiorari will present a substantial question worthy of review by the Supreme Court." This

12  in turn consists of a rehash of the arguments so soundly rejected by the Ninth Circuit.   In

13  reiterating those arguments, the State manages to mischaracterize completely the Ninth

14  Circuit's opinion, which most certainly did *not* hold that "an intervening change in decisional

15  law *alone*" is sufficient to warrant relief under Fed. Rule Civ. Proc. 60(b)(6).  On the contrary,

16  the  appellate court adopted the analysis framed by the Eleventh Circuit, which proceeds from

17  the premise that, to justify Rule 60(b)(6) relief, "'something more than a "mere" change in the

18  law is necessary.'" *Phelps v. Alameida*, 569 F.3d at 1133, quoting, *Ritter v. Smith*, 811 F.2d

19  1398, 1400 (11th Cir. 1987); discussed approvingly in *Gonzalez v. Crosby*, 545 U.S. 524

20  (2005).  As the Ninth Circuit went on to explain, what is required under *Gonzalez* is a more

21  thoughtful analysis, tied to the facts and history of the specific case under consideration rather

22  than the Procrustean approach on which the State vainly insists.

23      But it is unnecessary to belabor the merits of the Ninth Circuit's opinion – an opinion

24  that is really more than up to the task of speaking for itself.  The even more obvious problem

25  facing the State is the extreme unlikelihood of persuading the Supreme Court to make this case

26

27

28

1   one of the very tiny handful of cases in which it grants *certiorari* review in a given year.[3]  The

2   fact that not even a single Ninth Circuit judge requested a vote on rehearing the matter *en banc*

3   is a fair indication of the State's chance of obtaining Supreme Court review.  Thus even if the

4   State had an even chance of prevailing on the merits of its arguments in the Supreme Court

5   (and it does not), when one calculates in the remoteness of the possibility that the high court

6   will ever consider those merits, the State's prospects for prevailing in its proposed appellate

7   adventure are utterly remote.

8                 **2.  The State Is Not Facing Any "Irreparable Injury" Whatever**

9        The sum of the "injury" that the State will suffer, in the absence of a stay, consists of

10   this: After nearly 12 years, the State will finally be required to file a brief (*i.e.,* the "Answer")

11   in this Court, responding to the merits of Petitioner's federal constitutional claims.

12        By the time that happens, and Petitioner's traverse is filed, the Supreme Court will have

13   decided whether to grant *certiorari*, or will be much closer to having made that decision.  Even

14   if, after briefing is complete, this Court determines an evidentiary hearing is needed,

15   scheduling *that* proceeding can await the Supreme Court's *cert*. decision.[4]   But there is no

16   reason whatever why the *habeas* briefing process – which, in the experience of undersigned

17   counsel, inevitably takes many months to complete – should be delayed entirely while the

18   State saddles up Rocinante and sets out on its quest to get the Ninth Circuit reversed.[5]

19        How far the State falls short of making the necessary showing in this regard is nicely

20   illustrated by contrast with the very cases it cites.  This is *not* a situation in which the State will

21

22       [3]By coincidence, the New York Times just published the results of a study finding that the
Supreme Court is granting *certiorari* in an ever smaller number of cases – between 70 and 80 per
23   year, or less than 1% of those in which petitions are filed.  As the article notes, the cases taken  now
number about one-half of the 150 or so that were granted in the early 1980's.  Liptak, *The Case of*
24   *the Plummeting Supreme Court Docket*, The New York Times (Sept. 28, 2009).

25       [4]And, of course, if and when the Supreme Court does deign to take review, a motion to
26   stay proceedings in this Court would be far more appropriate.

27       [5] Petitioner's strong opposition to the stay requested by the State does not signify that he
would oppose a request by the State's counsel for a routine, reasonable extension of time
28   within which to file the Answer.

1    "be required to immediately conduct a murder trial" (Motion to Stay at 7:4-6, quoting,

2    *Franklin v. Duncan*, 891 F.Supp. at 520),[6] nor will the State "be forced to expend considerable

3    time and resources preparing for a new [capital] mitigation hearing . . . ." (*Id.* at 7:6-9,

4    quoting, *Johnson v. Bagley*, 2006 U.S. Dist. LEXIS 52564, *6 (S.D. Ohio 2006).

5    All the State needs to do is draft and file a brief responding to Petitioner's claims.  And if those

6    claims are anywhere near as weak as the State insists they are (see, *id.* at 7-8), then that really

7    should not be very much work.  It certainly does not constitute "irreparable injury."

8    ### 3.  A Stay Would Be Grossly Unfair to the Petitioner

9           Although Petitioner remains locked up in a state prison every day that this case lingers,

10   the State blithely asserts that "a few months delay will not cause [him] substantial injury."

11   Motion to Stay at 9:1-3, citing, *Franklin v. Duncan*, 891 F.Supp. at 521.  Apparently the State

12   either failed to read, or failed to report, the portion of the cited *Franklin* case in which Judge

13   Legge (over the State's strenuous opposition) ordered that the petitioner be released on bail

14   while the State pursued its appellate remedies.  Put simply: The reason – and the *only* reason

15   – why the stay in that case did not substantially injure Mr. Franklin was *because he was*

16   *released from custody*.  For precisely the same reason, the stay sought by the State in this case

17   would indeed cause "substantial injury" to the imprisoned Kevin Phelps.  The Petitioner in the

18   instant case is paying for every day of delay "in a coin that the state cannot refund." *Brown*

19   *v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003).  It is appalling that the State would suggest that

20   such a cost to the Petitioner means nothing at all.

21   ### 4.  The Public Interest Does Not Reside In Further Delay

22          As discussed, the Court need not expend significant resources on this case before the

23   State's *certiorari* petition is decided, and can certainly stay proceedings in the very unlikely

24   event that *cert.* is granted.  Thus the concerns about judicial economy, to which the State

25   alludes, are not substantial in fact.

26

27          [6]In a typographical error, the State (mis)cites the *Franklin* case as having been published

28   in Fed.Supp. *2d* – in fact it appears in the first Federal Supplement series.

There *is* an important public interest at stake here, however – albeit one that is more often honored in the breach.  It is the policy of the United States, enunciated by Congress, that *habeas corpus* petitions are to be granted top priority, considered immediately, and that – unless the petition is facially without merit – the Court "shall *forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted . . . ."  28 U.S.C. §2243;[7] see also, Habeas Rule 4 (requiring that petitions be determined "promptly").  Of course, the realities of court management and the sheer volume of *habeas* submissions in the federal courts have required a good deal of adjustment in that regard.  But neither the statutory language nor the underlying policy concerns have ever changed.  It remains a fundament of our federal legal system that, when someone in prison presents a colorable claim that his or her continued confinement offends the Constitution, that claim should be considered without undue delay.  The history of this case has already severely tested the flexibility of that basic principle.  What the State now proposes would do it violence.

## Conclusion

For the reasons set forth above, Petitioner Kevin Phelps respectfully requests that the Court deny the State's "Motion to Stay Proceedings Pending Certiorari Review," without prejudice to any such motion to be filed if and when such review is granted.

Dated: September 29, 2009                    Respectfully submitted,


_____
              /s/
AJ KUTCHINS, Appearing Specially for
KEVIN PHELPS
Petitioner *in propria persona*

---

[7]The statute goes on to specify that the State's return to the order to show cause must be filed "within three days unless for good cause additional time, not exceeding twenty days, is allowed."  *Ibid*.